**No. 25-10692-G**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

Ann Johnson, as the representative of a class of similarly situated person, and on behalf of the Royal Caribbean Cruises Ltd. Retirement Savings Plan,

*Plaintiff-Appellant*,

v.

Russell Investments Trust Company (F/K/A Russell Trust Company), Royal Caribbean Cruises Ltd., and Royal Caribbean Cruises Ltd. Investment Committee,

*Defendants-Appellees*.

On Appeal from the United States District Court for the Southern District of Florida
No. 1:22-CV-21735-RNS

---

### APPELLEES ROYAL CARIBBEAN CRUISES LTD. AND ROYAL CARIBBEAN CRUISES LTD. INVESTMENT COMMITTEE'S RESPONSE TO APPELLANT'S OPENING BRIEF

---

Lars C. Golumbic
William J. Delany
Samuel I. Levin
Larry M. Blocho Jr.
Richard A. Smith, Jr.
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., NW, Suite 1200
Washington, DC 20006
(202) 861-6615

*Attorneys for Defendants-Appellees Royal Caribbean Cruises Ltd. and the Royal Caribbean Cruises Ltd. Investment Committee*

**No. 25-10692-G**

**Ann Johnson vs. Russell Investments Trust Company, et al.**

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to Eleventh Circuit Rule 26.1-1, the undersigned counsel of record for Appellees Royal Caribbean Cruises Ltd. and Royal Caribbean Cruises Ltd. Investment Committee certifies that the following listed persons and entities have an interest in the outcome of this case.

1.   Aberg, Peter

2.   Ackerman, David P., Counsel for Appellee Russell Investments Trust Company

3.   Akerman LLP, Counsel for Appellee Russell Investments Trust Company

4.   Bauer, Benjamin J., Counsel for Appellant

5.   Berlinski, Milton

6.   Blocho Jr., Larry M., Counsel for Appellees Royal Caribbean Cruises Ltd. and Royal Caribbean Cruises Ltd. Investment Committee

7.   Chulack, Alexander

8.   Delany, William J., Counsel for Appellees Royal Caribbean Cruises Ltd. and Royal Caribbean Cruises Ltd. Investment Committee

9.   DeMaio, David M., Counsel for Appellees Royal Caribbean Cruises Ltd. and Royal Caribbean Cruises Ltd. Investment Committee

**No. 25-10692-G**
**Ann Johnson vs. Russell Investments Trust Company, et al.**

10. Golumbic, Lars C., Counsel for Appellees Royal Caribbean Cruises Ltd. and Royal Caribbean Cruises Ltd. Investment Committee

11. Groom Law Group, Chartered, Counsel for Appellees Royal Caribbean Cruises Ltd. and Royal Caribbean Cruises Ltd. Investment Committee

12. Hamilton Lane Advisors, L.L.C.

13. Hamilton Lane, Inc.

14. Hill, Brandon J., Counsel for Appellant

15. Hora, Robert C., Counsel for Appellee Russell Investments Trust Company

16. Johnson, Ann, Appellant

17. Levin, Samuel I., Counsel for Appellees Royal Caribbean Cruises Ltd. and Royal Caribbean Cruises Ltd. Investment Committee

18. Lukas, Paul, Counsel for Appellant

19. Milbank, LLP, Counsel for Appellee Russell Investments Trust Company

20. Murphy, Sean M., Counsel for Appellee Russell Investments Trust Company

21. Nichols Kaster, PLLP, Counsel for Appellant

**No. 25-10692-G**
**Ann Johnson vs. Russell Investments Trust Company, et al.**

22. Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Counsel for Appellees Royal Caribbean Cruises Ltd. and Royal Caribbean Cruises Ltd. Investment Committee

23. Paz, Alejandro J., Counsel for Appellee Russell Investments Trust Company

24. Reverence Capital Partners, L.P.

25. Royal Caribbean Cruises Ltd., Appellee

26. Royal Caribbean Cruises Ltd. Investment Committee, Appellee

27. Russell Investments Group, Ltd.

28. Russell Investments Trust Company, Appellee

29. The Honorable Robert N. Scola, Jr., U.S. District Court Judge

30. Smith Jr., Richard A., Counsel for Appellees Royal Caribbean Cruises Ltd. and Royal Caribbean Cruises Ltd. Investment Committee

31. Specht, Brock J., Counsel for Appellant

32. TA Associates Cayman, Ltd.

33. TA Associates Management, L.P.

34. Wenzel, Fenton, Cabassa, P.A., Counsel for Appellant

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Defendants-Appellees Royal Caribbean Cruises Ltd. and the Royal Caribbean Cruises Ltd. Investment Committee (collectively, the "Royal Caribbean Defendants") do not believe oral argument is necessary, as this appeal involves a straightforward application of this Court's decision in *Pizarro v. Home Depot, Inc.*, 111 F.4th 1165 (11th Cir. 2024).

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ C-1

STATEMENT REGARDING ORAL ARGUMENT .................................................. i

TABLE OF CONTENTS ........................................................................................ ii

TABLE OF CITATIONS ....................................................................................... iv

INTRODUCTION ................................................................................................... 1

STATEMENT OF THE ISSUES ............................................................................ 6

STATEMENT OF THE CASE ............................................................................... 6

    I.     FACTUAL BACKGROUND .................................................................. 6

         a.    The Plan. ...................................................................................... 6

         b.    The 2014-15 Request For Proposal ("RFP") Process. ................. 7

         c.    The Committee's Review of Russell and the Russell Funds ....... 11

         d.    Differences Between the Russell TDFs and Plaintiffs'
             Comparator TDFs (the Vanguard and American Funds TDFs) . . 13

    II.    PROCEDURAL BACKGROUND ...................................................... 14

    III.   STANDARD OF REVIEW .................................................................. 16

SUMMARY OF THE ARGUMENT ..................................................................... 17

ARGUMENT ........................................................................................................ 19

    I.     The District Court Properly Applied *Pizarro* in Rejecting Plaintiff's
         "Apples and Oranges" Comparison. ..................................................... 19

         a.    There is No Dispute That Comparing the Russell TDFs to the
             Vanguard and American Funds TDFs is an "Apples and Oranges"
             Comparison. .............................................................................. 19

         b.    Plaintiff's Assertion That She Can Demonstrate Objective
             Prudence by Relying on an "Apples and Oranges" Comparison is
             Inconsistent with Pizarro. ......................................................... 26

ii

II.    Plaintiff's Remaining Arguments Are Unavailing. ................................ 30

    a.    Plaintiff Repeatedly Conflates Procedural Prudence and Objective Prudence......................................................................................... 30

    b.    Plaintiff's Argument that Pizarro Should Be Limited to Its Exact Facts is Unpersuasive. .................................................................. 34

CONCLUSION.......................................................................................... 38

CERTIFICATE OF COMPLIANCE........................................................*post*

## TABLE OF CITATIONS

### Cases

*Anderson v. Intel Corp. Inv. Policy Comm.*,
137 F.4th 1015 (9th Cir. 2025).................................................................. 37

*Birse v. CenturyLink, Inc.*, No. 17-cv-02872,
2019 WL 1292861 (D. Colo. Mar. 20, 2019)........................................ 24

*Cho v. Prudential Ins. Co. of Am.*,
No. 2:19-cv-19886, 2021 WL 4438186 (D.N.J. Sept. 27, 2021) ........... 24

*Copeland v. Ga. Dep't of Corr.*,
97 F.4th 766 (11th Cir. 2024)................................................................ 38

*Cutrone v. Allstate Corp.*,
No. 1:20-cv-06463, 2025 WL306179 (N.D. Ill. Jan. 27, 2025) 20, 23, 25, 26, 27, 32

*Davis v. Salesforce.com, Inc.*,
No. 3:20-cv-01753, 2020 WL 5893405 (N.D. Cal. Oct. 5, 2020) ......... 25

*Davis v. Wash. Univ.*,
960 F.3d 478 (8th Cir. 2020);............................................................... 20

*Dorman v. Charles Schwab Corp.*,
No. 4:17-cv-00285, 2019 WL 580785 (N.D. Cal. Feb. 8, 2019) ........... 24

*Fink v. Nat'l Sav. & Tr. Co.*,
772 F.2d 951 (D.C. Cir. 1985)................................................................ 5

*Forman v. TriHealth, Inc.*,
40 F.4th 443 (6th Cir. 2022).................................................................. 24

*Forman v. TriHealth, Inc.*,
563 F. Supp. 3d 753 (S.D. Ohio 2021)................................................... 24

*Gonzalez v. Northwell Health, Inc.*,
632 F. Supp. 3d 148 (E.D.N.Y. 2022)..................................................... 24

*Luckett v. Wintrust Fin. Corp.*,
No. 1:22-cv-03968, 2024 WL 3823175 (N.D. Ill. Aug. 14, 2024) ........ 29

*Matousek v. MidAm. Energy Co.*,
51 F.4th 274 (8th Cir. 2022)................................................... 5, 18, 23, 28

*Meiners v. Wells Fargo & Co.*,
   898 F.3d 820 (8th Cir. 2018) ................................................................ 22

*Nunez v. B. Braun Med., Inc.*,
   No. 5:20-cv-04195, 2023 WL 5339620 (E.D. Pa. Aug. 18, 2023) ................ 1, 7, 35

*Patterson v. Morgan Stanley*,
   No. 1:16-cv-06568, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) .......................... 25

*Pizarro v. Home Depot, Inc.*,
   111 F.4th 1165 (11th Cir. 2024)..i, 1, 2, 3, 4, 5, 6, 15, 16, 17, 18, 19, 20, 21, 23, 25,
   26, 27, 28, 30, 31, 32, 33, 34, 35, 36, 37, 38

*Smith v. CommonSpirit Health*,
   37 F.4th 1160 (6th Cir. 2022) .................................................... 20, 22, 25

*Tatum v. RJR Pension Inv. Comm.*,
   761 F.3d 346 (4th Cir. 2014) ................................................................ 30

## **Statutes**

29 U.S.C. § 1002.......................................................................................... 11

## INTRODUCTION

Plaintiff-Appellant Ann Johnson ("Plaintiff") claims that Defendants-Appellees Royal Caribbean Cruises Ltd. ("Royal Caribbean") and the Royal Caribbean Cruises Ltd. Investment Committee ("Investment Committee" or "Committee") (collectively, the "Royal Caribbean Defendants") breached their fiduciary duties under the Employee Retirement Income Security Act ("ERISA") with respect to the Royal Caribbean Cruises Ltd. Retirement Savings Plan (the "Plan"). In particular, Plaintiff alleges that the Royal Caribbean Defendants should not have selected and retained: (i) Defendant-Appellee Russell Investments Trust Company ("Russell") as the Plan's investment advisor; or (ii) a suite of target date funds ("TDFs")[1] managed by Russell (the "Russell TDFs") in the Plan's investment lineup.[2]

The District Court correctly granted summary judgment in Defendants' favor in reliance on this Court's recent decision in *Pizarro v. Home Depot, Inc.*, 111 F.4th 1165 (11th Cir. 2024). *Pizarro*, like this case, was an ERISA breach of fiduciary duty case involving a challenge to TDFs and is dispositive here. In *Pizarro*, this Court held that a plaintiff bears the burden of proving ***both*** that: (i) the fiduciary employed an imprudent process in reaching the decision at issue; ***and*** (ii) an imprudent process led

---

[1] "TDFs hold an underlying investment portfolio based on a target retirement year and adjust the portfolio to become more conservative as the target year approaches." *Nunez v. B. Braun Med., Inc.*, No. 5:20-cv-04195, 2023 WL 5339620, at *4 (E.D. Pa. Aug. 18, 2023).

[2] "Although Johnson's complaint challenges other Russell funds, Johnson does not dispute that her claims ultimately rest only on the Russell TDFs." Dkt. 273 at 25 n.13.

1

to an objectively imprudent result that caused losses to the plan. *Pizarro*, 111 F.4th at 1176. As to the TDFs at issue in *Pizarro*, this Court found that "the plaintiffs failed to offer enough evidence to show that [the TDFs] were [an] objectively imprudent investment[.]" *Id.* at 1182. In doing so, this Court: (i) rejected the plaintiffs' "apples and oranges" comparison to other TDFs with different investment strategies, "glide paths," and "risk-return profiles"; and (ii) endorsed "an apples-to-apples comparison" of the TDFs to their custom index, which showed that their "returns closely matched . . . throughout the entire class period." *Id.* at 1180.

Applying *Pizarro*, the District Court found that Plaintiff could not meet her burden of proving that the Russell TDFs were an objectively imprudent investment option and that summary judgment in Defendants' favor was therefore warranted. Dkt. 273 at 15-21.[3] While the District Court's opinion suggests that it would have also ruled in favor of the Royal Caribbean Defendants on the basis that they employed a prudent process, it ultimately did not need to reach the issue. *See id.* at 21 (stating that "Johnson's complaints about Royal Caribbean's allegedly faulty selection and retention process" were not "supported by the record").[4]

---

[3] Citations to documents filed on the public docket are in accordance with the pagination included in their file stamp. Citations to documents filed under seal are in accordance with their Bates numbering.

[4] Plaintiff's appeal only raises the issue of objective prudence with respect to the Royal Caribbean Defendants. *See* Dkt. 32 ("Opening Brief") at 3-4 (Statement of the Issues). It does not include the other arguments that the Royal Caribbean Defendants raised in support of their motion for summary judgment, including procedural prudence. *See* Dkt. 176 at 7-13.

In holding that Plaintiff had failed to meet her burden with respect to objective prudence, the District Court first found that, under *Pizarro*, Plaintiff's "proffered comparators—Vanguard TDFs and American Funds TDFs" (the "Comparator TDFs")—were "inapt." Dkt. 273 at 16-17. In particular, "there are several significant, and largely undisputed, differences," between the Comparator TDFs and the Russell TDFs, including in the use of active versus passive funds, "to" versus "through" glide paths, and asset allocation. *Id.* Because comparisons between TDFs with different investment objectives are "apples and oranges" and insufficient to "show that a prudent fiduciary would not have also retained these funds" under *Pizarro*, 111 F.4th at 1180, Plaintiff's "reliance on them [was] unavailing." Dkt. 273 at 16-19.

The District Court then found that, under *Pizarro*, the only appropriate comparator for the Russell TDFs proffered by Plaintiff was Russell's custom TDF benchmark. Dkt. 273 at 19; *see also Pizarro*, 111 F.4th at 1180 ("Home Depot's investment consultant . . . benchmarked each fund against a custom index . . . creating an apples-to-apples comparison."). When compared to their custom TDF benchmark, the Russell TDFs were an objectively prudent investment option, as "at the time the Russell TDFs were added to the Plan's investment lineup, their returns *exceeded* the returns of the corresponding benchmark," and "[t]he Russell TDFs' underperformance relative to their benchmark was not significant during the Class Period." Dkt. 273 at 19 (emphasis and alteration in original). While Plaintiff "insist[ed] that any underperformance at all, no matter how slight it may be, . . . is meaningful," "the Court

3

agree[d] with other courts that have found that, to trigger a finding of objective imprudence, 'the comparative underperformance must generally be "consistent" and "substantial" to support an inference of imprudence.'" *Id.* at 19-20.

Plaintiff does not dispute much of the above. Indeed, she readily concedes that the Comparator TDFs "'are designed for different purposes and thus choose their investments differently' than the Russell TDFs, 'so there is no reason to expect them to make similar returns over any given span of time.'" Dkt. 189 at 18. Plaintiff also acknowledges that, at the time Russell was selected, the Russell TDFs had "performed in line with, *and in many cases outperformed*, their respective composite benchmarks since inception[.]" Dkt. 180 ¶ 34 (emphasis added); Dkt. 190 ¶ 34. She similarly admits that any later underperformance was insignificant, as "[d]uring the less than four-year class period, the Russell TDFs underperformed their composite benchmarks" by "0.38% to 0.9[7]% on an annualized basis." Dkt. 273 at 20 n.9.

In light of these undisputed facts, Plaintiff attempts to rewrite *Pizarro*'s objective prudence standard. Specifically, Plaintiff claims that the District Court's inquiry should have focused on whether a prudent fiduciary with the same *subjective* investment goals as the Committee would have arrived at the same decisions, i.e., selected and retained the Russell TDFs. Because the Investment Committee's *process* was supposedly flawed, the answer is "no" according to Plaintiff, and she has therefore met her burden of proving that the Russell TDFs were *objectively* imprudent. Plaintiff claims once that burden is met, damages may then be calculated based on performance

4

comparisons to the Vanguard TDFs or the American Funds TDFs—thereby circumventing the required "apples-to-apples comparison" under *Pizarro*.

That is not the law. "[L]iability turns not only on an imprudent process, but also on that process ***resulting*** in an imprudent investment." *Pizarro*, 111 F.4th at 1176 (emphasis added); *see also Fink v. Nat'l Sav. & Tr. Co.*, 772 F.2d 951, 962 (D.C. Cir. 1985) (Scalia, J., concurring in part and dissenting in part) (ERISA's duty of prudence embraces "two related but distinct duties . . . to investigate and evaluate investments, and to invest prudently. Neither does the faithful discharge of the first satisfy the second, ***nor does breach of the first constitute breach of the second***." (emphasis added)).

Accordingly, Plaintiff is required to prove both that the Investment Committee employed an imprudent process in selecting and retaining the Russell TDFs and that the Russell TDFs were an objectively imprudent investment option, i.e., loss causation under *Pizarro*, based on comparators with similar investment strategies, "glide paths," and "risk-return profiles." *Pizarro*, 111 F.4th at 1180; *see also Matousek v. MidAm. Energy Co.*, 51 F.4th 274, 281 (8th Cir. 2022) (holding that, in order to constitute a "meaningful benchmark," a comparator fund must "hold similar securities, have similar investment strategies, and reflect a similar risk profile" as the challenged fund). As the District Court correctly recognized, Plaintiff's view of the world would "collapse the analysis of the fiduciary's *process* into the evaluation of the objective *result* of that process, defeating the whole purpose of the objective-prudence prong of

the inquiry." Dkt. 273 at 18-19.

In light of the above, and as explained more fully below, the District Court's grant of summary judgment should be affirmed because it correctly applied this Court's controlling decision in *Pizarro*.

## STATEMENT OF THE ISSUES

I.    Whether the District Court erred in holding that, under *Pizarro*, Plaintiff "has failed to adduce evidence sufficient to establish a genuine issue of material fact requiring a trial on whether the investments at issue were objectively imprudent." Dkt. 273 at 14-21.

## STATEMENT OF THE CASE

### I.    Factual Background[5]

#### a.    The Plan.

Royal Caribbean sponsors the Plan, which is a defined contribution retirement plan "intended to encourage and assist in providing a regular savings program for eligible employees." Dkt. 177-1 at 8  The Investment Committee oversees the investment options for the Plan and engages an independent investment consultant to assist with investment decisions. *Id.* at 11, 13-14.

From October 1, 2015 through May 23, 2019, the Plan offered an investment lineup with six types of investment options covering key asset classes and strategies—

---

[5] This factual background section provides contextual information for this Court's convenience. A complete recitation of the relevant facts is set forth in the Royal Caribbean Defendants' Statement of Material Facts Not in Dispute (Dkt. 177).

including the Russell TDFs, as well as a mix of actively and passively managed mutual funds managed by Russell (the "Russell Asset Class Funds") (collectively, the "Russell Funds").[6]  Dkt. 177-2 at 6; Dkt. 177-3 at 6.  The Russell TDFs pursued a conservative strategy with relatively lower equity exposures and a "to" retirement glide path designed for asset preservation late in life, rather than growth, in order to manage shortfall and volatility risk.  Dkt. 197-6 at 5.  The Russell TDFs' use of a hybrid of active and passive management was a feature that the Investment Committee desired. Dkt. 177-35 at 3-4; Dkt. 177-36 at 3-4; Dkt. 177-57 at 7.

At the time the Russell TDFs were added to the Plan's investment lineup, their returns exceeded the returns of Russell's custom TDF benchmark.  Dkt. 177-57 at 9-11; Dkt. 180 ¶ 34; Dkt. 190 ¶ 34; Dkt. 177 ¶ 44; Dkt. 188 ¶ 44.  After the Russell TDFs were added to the Plan, their underperformance relative to Russell's custom TDF benchmark was not significant.  Dkt. 177-57 at 9-11, 13; Dkt. 177 ¶ 44; Dkt. 188 ¶ 44.

### b.  The 2014-15 Request For Proposal ("RFP") Process.

In March 2014, the Investment Committee decided to conduct an RFP "for the provision of investment and trustee services for the Plan."  Dkt. 177-5 at 3.  The Investment Committee engaged its benefits counsel, McDermott, Will & Emery

---

[6] "Actively managed funds use fund managers to buy and sell stocks in an effort to outperform a specific index, such as the S&P 500.  Passively managed funds (which are also known as 'index funds') track an established market index, and the fund manager does not make any independent investment choices.  Index funds tend to be less expensive than actively managed funds, in which the fund's investment advisers exercise supervision over which investments are suitable for the fund and its investors."  *B. Braun Med., Inc.*, 2023 WL 5339620, at *4.

("McDermott"), to administer the RFP, and a working group of Royal Caribbean employees was formed to assist the Committee throughout the process (the "RFP Team"). Dkt. 177-51 at 11-12, 14-15; Dkt. 177-34 at 5.

The RFP was issued to 12 companies "across a variety of categories," including "relationship banks," "mutual fund companies," and "investment fiduciaries." Dkt. 177-34 at 5, 15. McDermott prepared a memorandum evaluating the initial responses of the 11 companies who ultimately responded to the RFP. *See generally* Dkt. 177-29. The RFP Team reviewed and evaluated the RFP responses and McDermott's memorandum, submitting four potential RFP finalists (including Russell) to the Chair of the Investment Committee, who signed off on the list of finalists. Dkt. 177-30 at 2-3; Dkt. 177-34 at 5, 18.

The four RFP finalists gave in-person presentations to the Investment Committee. Dkt. 177-34 at 5; *see generally* Dkt. 177-31. Russell's presentation included detailed information on the composition of the Russell TDFs and Russell's overall investment strategy. *See generally* Dkt. 177-59. Among other things, the presentation discussed: (i) Russell's "[s]teadfast belief in income replacement"; (ii) the expected income replacement level in Russell's target glide path; (iii) the characteristics of Russell's glide path as compared to other firms (Russell's was more conservative); (iv) that the Russell TDFs' glide path was "to," rather than "through," retirement; (v) Russell's multi-manager investment strategy; and (vi) that Russell's overall portfolio for the Russell TDFs included "[l]ess home country bias, [and] more

8

real assets." *Id.* at 3-10.

"[O]ne of the things that . . . impressed the [C]ommittee" were "the people behind the scenes" at Russell that they met, including individuals "whose job it was to . . . select funds -- and supervise them, who were . . . actively in conversations with them in terms of their strategies." Dkt. 177-50 at 4. Specifically, the Investment Committee met with, among others, Josh Cohen, Russell's Defined Contribution Practice Leader and head of Institutional Defined Contributions at the time. Dkt. 177-31 at 3; Dkt. 177-37 at 3. Mr. Cohen "serves on the Department of Labor's ERISA Advisory Council, which provides advice on policies and regulations affecting employee benefit plans." Dkt. 177-37 at 3. The Investment Committee also met with Brian Meath, a Multi-Asset Solutions Portfolio Manager, and Stacey Bro, a Senior Relationship Manager. Dkt. 177-31 at 3.

The Investment Committee also obtained follow-up information from Russell, including historical returns for the funds in the proposed 401(k) Plan lineup—i.e., the Russell TDFs and the Russell Asset Class Funds—as compared to their composite index benchmarks over year-to-date, one-year, three-year, and five-year horizons, and since inception. Dkt. 177-61 at 3-9; *see generally* Dkt. 177-32; Dkt. 177-60. This was consistent with industry standards at the time, as a majority of plans monitored TDF performance based on the investment manager benchmark. Dkt. 177-64 at 3. The historical performance returns showed that the Russell TDFs typically performed in line with their benchmark. Dkt. 177-61 at 5-7.

After receiving the follow-up materials, the Investment Committee met on multiple occasions to evaluate the RFP responses and, after thorough discussion and multiple rounds of additional follow-up requests, selected Russell as the Plan's investment advisor on January 13, 2015.  Dkt 177-7 at 2-3; Dkt. 177-8 at 3; Dkt. 177-9 at 2-3; Dkt. 177-35 at 3-4; Dkt. 177-36 at 3-4; *see generally* Dkts. 177-33, 177-34.  The Committee determined that Russell was the "clear winner" of the RFP based on multiple factors, including fee reductions, automated employee processes, and Russell's "market leading expertise."  Dkt. 177-37 at 2-3.  In particular:

- Russell offered the second-lowest price of the four RFP finalists and had significant expertise in providing consulting services and investment advice, including "[v]ery strong" research capabilities.  Dkt. 177-34 at 6-9, 18.

- "Russell's references w[]ere the most professional" of the RFP finalists. *Id.* at 6.

- Russell was the largest provider of outsourced chief investment officer services in the world (i.e., third parties who provided investment management services to organizations). *Id.* at 16.

- Members of the Investment Committee were impressed by Russell's investment philosophy and strategies.  Dkt. 177-50 at 4; Dkt. 177-37 at 3.

- Russell's (and the Russell TDFs') more conservative approach aligned with the fact that the Investment Committee was risk-conscious, and the

10

Russell TDFs' use of a hybrid of active and passive management was a feature that the Investment Committee desired.  Dkt. 177-35 at 3-4; Dkt 177-36 at 3-4; Dkt. 177-39 at 25; Dkt. 177-57 at 7.

The Investment Committee formally approved the appointment of Russell at its August 19, 2015 meeting.  Dkt. 177-10 at 3.  Subsequently, the Investment Committee and Russell entered into an investment management agreement ("IMA") dated September 30, 2015.  *See generally* Dkt. 177-38.  The IMA provided that Russell would be a 3(21) investment advisor for the Plan and a 3(38) investment manager with respect to the Russell Funds.  *Id.* at 4.[7]  The Russell Funds were added to the Plan's investment lineup on October 1, 2015.  Dkt. 177-62 at 2.

### c.    The Committee's Review of Russell and the Russell Funds.

During Russell's tenure as investment advisor, the Investment Committee met quarterly.  *See* Dkt. 177-12 – Dkt. 177-24.  The Investment Committee generally received an investment update from Russell at each meeting and, in conjunction with these updates, Russell provided the Investment Committee with a written report containing detailed information about the Plan's investments.  Dkt. 177-56 at 12; *see, e.g.*, Dkt. 177-63.  These materials included information about fees, performance over various periods, performance against industry benchmarks, and other key metrics.

---

[7] An ERISA "3(21) investment advisor" advises a plan but does not undertake the ultimate fiduciary decision to decide which investments to select or remove. Accordingly, their fiduciary responsibility is limited to advice.  *See* 29 U.S.C. § 1002(21).  Meanwhile, an ERISA "3(38) investment manager" has full discretionary authority and control to make investment decisions.  *See* 29 U.S.C. § 1002(38).

Dkt. 177-56 at 3; *see, e.g.*, Dkt. 177-63 at 3-10.  Meeting minutes indicate that, during the Class Period, the Russell Funds generally performed in-line with their respective benchmarks, though some of the Russell Funds underperformed compared to a group of peer funds.  *See, e.g.*, Dkt. 177-16, May 18, 2017 Inv. Comm. Mins. at 3.

Meeting minutes also indicate that Investment Committee members frequently challenged Russell and sought additional information—particularly when performance concerns versus peer groups persisted.  Dkt. 177-56 at 12; *see, e.g.*, Dkt. 177-12 at 3 (requesting "additional peer comparison information" and questioning "Russell's glide path in its target date funds"); Dkt. 177-15 at 3 (asking questions about "the manager selection process, the performance cycles of difference asset classes[,] and additional risk adjusted return measures," as well as for a "deeper dive into the small cap fund," which had underperformed); Dkt. 177-16 at 3 (asking whether Russell's "strategy was dynamic enough to capture upside in good markets").

The Investment Committee later began "call[ing] into question the performance of Russell as investment manager" due to underperformance versus peer groups and, "after more of the same" despite "challeng[ing] Russell on a quarterly basis," the Committee "decided to engage an independent third[-]party, White Oak[,] to conduct a thorough review" of the Plan's investment lineup."  Dkt. 177-40 at 2.  Overall, White Oak had a "favorable impression" of the Plan's investment line-up and concluded that while the Russell TDFs had an appropriate glidepath, they were leaving potential returns on the table.  Dkt. 177-19 at 2; Dkt. 177-39 at 15-16.

Russell responded to White Oak's report at the Committee meeting following White Oak's presentation. Dkt. 177-20 at 3. After evaluating Russell's response, the Investment Committee ultimately decided to conduct an RFP for the Plan's 3(21) advisor role because it felt that the Russell TDFs were no longer the right fit for the Plan, in part due to concerns that Russell was not dynamic or tactical enough to embrace current market conditions. Dkt. 177-21 at 2; Dkt. 177-49 at 4. Russell was terminated effective April 30, 2019, and the Russell Funds were removed from the Plan shortly thereafter—including the Russell TDFs. Dkt. 177-41 at 2; Dkt. 177-42 at 13.

### d. Differences Between the Russell TDFs and Plaintiffs' Comparator TDFs (the Vanguard and American Funds TDFs).

In an attempt to prove that the Russell TDFs were objectively imprudent investment options, Plaintiff compares their performance to that of the Vanguard and American Funds TDFs, i.e., the Comparator TDFs. However, as Plaintiff acknowledged, the Comparator TDFs do not provide the apples-to-apples comparison required by *Pizarro*, as they "'are designed for different purposes and thus choose their investments differently' than the Russell TDFs, 'so there is no reason to expect them to make similar returns over any given span of time.'" Dkt. 189 at 18. In particular:

- The Russell TDFs employed a hybrid strategy, investing in both active and passive funds. By contrast, the Vanguard TDFs invested solely in passive funds, and the American Funds TDFs invested solely in active funds. Dkt. 177-57 at 7-8.

13

- The Russell TDFs had a "to" glide path, meaning they reached their minimum equity allocation at the expected retirement date. *Id.* at 7. By contrast, the Vanguard and American Funds TDFs both had "through" glide paths that did not reach their minimum equity allocations until 5 to 10 years after the expected retirement date. *Id.* Accordingly, the Vanguard and American Funds TDFs took more equity risk in seeking to pursue higher returns than the Russell TDFs did. *Id.*

- In addition to the different glidepaths, the Russell TDFs' asset allocation differed from those of the Vanguard and American Funds TDFs in several key respects. *Id.* at 5-6. For example, the Russell TDFs: (i) had a lower allocation to U.S. equities and generally a higher allocation to emerging markets equities; and (ii) a diversification strategy that included investments in real assets, such as global infrastructure. *Id.*

- The Russell TDFs utilized tactical asset allocation, which allowed them to deviate from their glide paths to make short-run adjustments to their portfolios in response to changing market conditions. *Id.* at 6. By contrast, the Vanguard and American Funds TDFs did not use tactical asset allocation.

## II.    Procedural Background

In June 2021, Plaintiff, a former participant in the Plan, filed suit against Russell in federal court. Dkt. 1. She later filed an amended complaint, adding the Royal

Caribbean Defendants to the lawsuit. Dkt. 31. The District Court subsequently certified a class of "[a]ll participants and beneficiaries of the Royal Caribbean Cruises, Ltd. Retirement Savings Plan at any time from October 1, 2015, to the date Russell was removed as the Plan's investment manager." Dkt. 161 at 3.

On January 31, 2025, the District Court granted summary judgment in favor of Defendants because Plaintiff failed to meet her burden of proof to show that "the investments at issue were objectively imprudent," as required under this Court's decision in *Pizarro*. Dkt. 273 at 14-15. The District Court's reasoning was "two-fold." *Id.* at 16.

***First***, "Johnson's proffered comparators do not provide an 'apples-to-apples comparison' from which a reasonable factfinder could conclude that no hypothetical prudent fiduciary would have selected and retained the Russell TDFs." *Id.* This is because "there are [] several significant, and largely undisputed, differences between Johnson's proffered comparators . . . and the Russell TDFs," including in the use of active versus passive funds, "to" versus "through" glide paths, and asset allocation. *Id.* at 16-17. Accordingly, the District Court rejected Plaintiff's attempt to "rely[] on an 'apples and oranges' comparison to demonstrate that an investment was objectively imprudent," consistent with this Court's decision in *Pizarro*. *Id.* at 18.

***Second***, "the only apples-to-apples comparison in the record—Russell's custom TDF benchmark—[] shows (1) a favorable performance of the Russell TDFs at the time they were selected and (2) only insignificant underperformance during the class

15

period." *Id.* at 16. "[B]oth parties agree that Russell's custom TDF benchmark is an appropriate apples-to-apples comparator[,] [a]nd there is similarly no dispute that, at the time the Russell TDFs were added to the Plan's investment lineup, their returns *exceeded* the returns of the corresponding benchmark." *Id.* at 19. While the parties disagreed about "the import of the Russell TDFs' underperformance, relative to the custom benchmark, later in the class period," "Johnson herself does not dispute that '[t]he Russell TDFs' underperformance relative to their benchmark was not significant during the Class Period'" and, therefore insufficient "to support an inference of imprudence." *Id.* at 19-20.

While Plaintiff attempted to point to "what she calls a 'plethora of evidence'" to show that the Russell TDFs were objectively imprudent—the same evidence she points to on appeal—the District Court rejected these criticisms as both unfounded and, in any event, irrelevant under the objective prudence analysis this Court set forth in *Pizarro*:

> Even if all these allegations were supported by the record—they are not—they nonetheless miss the mark. . . . The evidence recounted above simply rehashes Johnson's complaints about Royal Caribbean's allegedly faulty selection and retention process and Russell's alleged internal missteps; none of it establishes that the resulting investment itself was objectively imprudent.

*See id.* at 20-21. Accordingly, Plaintiff "failed to identify sufficient evidence from which a reasonable factfinder could infer that the selection, provision, and retention of Russell and the Russell funds was objectively imprudent." *Id.* at 21.

### III.    Standard of Review

"[A] district court's grant of summary judgment" is reviewed "de novo." *Pizarro*, 111 F.4th at 1173. "'When the nonmoving party has the burden of proof at trial,' the party moving for summary judgment . . . 'may show—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case" or, "[a]lternatively, . . . may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* "If the moving party shows the absence of a triable issue of fact by either method, the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial." *Id.* "If the nonmoving party fails to make this showing, the moving party is entitled to summary judgment." *Id.*

## SUMMARY OF THE ARGUMENT

This case involves a straightforward application of this Court's decision in *Pizarro*. Just like *Pizarro*, Plaintiff challenges a suite of TDFs that purportedly underperformed as compared to certain "apples and oranges" alternatives available in the market, but "closely matched" the returns of the "custom index created by" the investment manager "throughout the entire class period." *Pizarro*, 111 F.4th at 1180. Accordingly, *Pizarro* dictates that Plaintiff "cannot succeed on [her] breach-of-fiduciary-duty claims" because she has "failed to offer enough evidence to show that the [] challenged fund[] [was] [an] objectively imprudent investment[]." *Id.* at 1182.

The material facts are not in dispute. Indeed, Plaintiff concedes that two of her

three comparators—the Vanguard TDFs and American TDFs—"'are designed for different purposes and thus choose their investments differently' than the [challenged] TDFs, 'so there is no reason to expect them to make similar returns over any given span of time.'" Dkt. 189 at 18. And as to her third comparator—the Russell TDFs' custom benchmark—Plaintiff concedes that, at the time of selection, the Russell TDFs had "performed in line with, and in many cases outperformed, their respective composite benchmarks since inception," and any later underperformance was not significant. Dkt. 177 ¶ 44; Dkt. 180 ¶ 34; Dkt. 188 ¶ 44; Dkt. 190 ¶ 34.

On appeal, Plaintiff attempts to circumvent the District Court's faithful application of *Pizarro* by first arguing that, despite key differences, the Comparator TDFs are nevertheless appropriate comparators merely by virtue of their inclusion in the Plan before and after the Russell TDFs. In doing so, Plaintiff conflates ***calculations of loss*** with her burden to prove ***loss causation***, i.e., objective prudence—as is apparent from the inapposite caselaw on which she relies. The law is clear that "apples and oranges" comparisons are insufficient under the objective prudence standard, *Pizarro*, 111 F.4th at 1180, which requires that comparator funds "hold similar securities, have similar investment strategies, and reflect a similar risk profile" as a challenged fund. *Matousek*, 51 F.4th at 280-281.

Plaintiff's remaining arguments fare no better. Plaintiff next claims that *Pizarro*'s objective prudence standard only requires her to show that a prudent fiduciary with the same ***subjective*** investment goals as the Committee would not have

selected and retained the Russell TDFs.  As the District Court correctly recognized, however, Plaintiff's position conflates procedural prudence with objective prudence, "defeating the whole purpose of the objective-prudence prong of the inquiry[.]"  Dkt. 273 at 18-19.  This would also result in the ***same investment option*** being considered ***both*** objectively prudent ***and*** imprudent depending on the subjective objectives of the plan fiduciary who selected it—as Plaintiff herself acknowledges.

Finally, Plaintiff makes a last-ditch effort to distinguish the facts of the instant case from *Pizarro*.  But the "distinguishing" facts that Plaintiff identifies are: (i) criticisms that, like much of her appeal, relate to ***procedural*** prudence, not ***objective*** prudence; (ii) attempts to read non-existent requirements into *Pizarro*'s objective prudence standard; and/or (iii) unsupported by the record.

For these reasons, discussed in further detail below, this Court should affirm the District Court's grant of summary judgment in favor of Defendants.

## **ARGUMENT**

I.      **The District Court Properly Applied *Pizarro* in Rejecting Plaintiff's "Apples and Oranges" Comparison.**

a.      **There is No Dispute That Comparing the Russell TDFs to the Vanguard and American Funds TDFs is an "Apples and Oranges" Comparison.**

When evaluated under the standard endorsed by this Court in *Pizarro*—and the only two district courts to subsequently interpret it—Plaintiff's claims fail because she cannot meet her burden of showing that the Russell TDFs were objectively unreasonable.  Just like *Pizarro*, and as the District Court, Defendants' experts, and

Plaintiff herself all agree, the Comparator TDFs do not provide an "apples-to-apples comparison" that could support a conclusion that no hypothetical prudent fiduciary would have selected and retained the Russell TDFs in light of key differences in their investment objectives, including: (i) active versus passive management; (ii) glide path; and (iii) asset allocation.  Dkt. 273 at 16-17; Dkt. 177-57 4-8; Dkt. 177-58 at 3-4; Dkt. 189 at 18.

*First*, the Russell TDFs employed a hybrid strategy, investing in both active and passive funds, while the Vanguard TDFs invested solely in passive funds, and the American Funds TDFs invested solely in active funds.  Dkt. 273 at 16-17; *see also supra* p. 14.  As courts around the country have recognized, "[active and passive funds] have different aims, different risks, and different potential rewards that cater to different investors.  Comparing apples and oranges is not a way to show that one is better or worse than the other."  *Davis v. Wash. Univ.*, 960 F.3d 478, 485 (8th Cir. 2020); *see also Pizarro*, 111 F.4th at 1180 (holding that "apples and oranges" comparison was insufficient under objective prudence standard); *Cutrone v. Allstate Corp.*, No. 1:20-cv-06463, 2025 WL306179, at *9 (N.D. Ill. Jan. 27, 2025) ("[C]ourts [] have decided as a matter of law that an 'apples and oranges' comparison cannot establish objective imprudence.") (citing *Pizarro*, 111 F.4th at 1180, *Davis*, 960 F.3d at 485, and *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022), among other cases).

*Second*, the Russell TDFs had a "to" glide path, meaning the Russell TDFs

reached their minimum equity allocation at the expected retirement date. Dkt. 273 at 17; *see also supra* p. 14. Meanwhile, the Comparator TDFs both had "through" glide paths that did not reach their minimum equity allocations until 5 to 10 years **after** the expected retirement date. Dkt. 273 at 17; *see also supra* p. 14. In other words, the Russell TDFs employed a more conservative investment strategy by taking significantly less equity risk than the Comparator TDFs. Dkt. 273 at 17; *see also supra* p. 14. This Court in *Pizarro* recently affirmed the district court's grant of summary judgment to the defendants because the plaintiffs' proposed comparator TDFs suffered from this exact problem:

> [Plaintiffs] argue that the BlackRock funds underperformed both the median target date fund in the market and the specific [TDFs] their expert selected. As the district court found, these are "apples and oranges." [TDFs] are not all created equal—funds from different sponsors may have different glide paths, which means they also have different risk-return profiles. In years when the equity market is hot, a more aggressive [TDF] that retains equities longer will appear to outperform a fund that shifts toward more conservative assets like bonds sooner. But that snapshot does not mean it is objectively imprudent to adopt a more conservative strategy—the tables turn when the market is down. . . . ERISA does not require that fiduciaries choose the maximally aggressive option in each investment class; the plaintiffs cannot show that a prudent fiduciary would not have also retained these funds in light of Home Depot's investment objectives.

*Pizarro*, 111 F.4th at 1180.

**Third**, the Russell TDFs had a fundamentally different asset allocation than the Comparator TDFs. Dkt. 273 at 17; *see also supra* p. 14. For example, the Russell TDFs had a lower asset allocation to U.S. equities and generally a higher asset allocation to emerging market equities than the Comparator TDFs. Dkt. 273 at 17; *see*

*also supra* p. 14.  Moreover, the Russell TDFs' diversification strategy also included investments in real assets such as global infrastructure, global commodities, and global real estate, while the Comparator TDFs did not invest at all in real assets.  Dkt. 273 at 17; *see also supra* p. 14.  Thus, performance comparisons between the Russell TDFs and the Comparator TDFs are inapt, as "[t]he fact that one fund with a different strategy ultimately performed better does not establish anything about whether the . . . TDFs were an imprudent choice."  *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) (footnote omitted); *see also Smith*, 37 F.4th at 1167 (affirming dismissal and finding that plaintiff's comparators were "inapt" because "each fund ha[d] distinct goals and distinct strategies.").

Plaintiff does not dispute these critical differences.  Indeed, she readily admits that her Comparator TDFs "'are designed for different purposes and thus choose their investments differently' than the Russell TDFs, 'so there is no reason to expect them to make similar returns over any given span of time.'"  Dkt. 189 at 18.  Experts for both the Royal Caribbean Defendants and Russell similarly opined that such differences made performance comparisons between these TDFs inapt.  Dkt. 177-57 4-8; Dkt. 177-58 at 3-4.[8]  Accordingly, the Comparator TDFs do not "provide a sound basis for comparison—a meaningful benchmark," as required under ERISA.

---

[8] Meanwhile, none of Plaintiff's experts conducted any independent analysis on this issue.  They instead readily conceded that any comparators to the Russell TDFs that they analyzed were at the direction of Plaintiff's counsel, not the result of their own analysis of whether such comparisons are appropriate.  Dkt. 177-52 at 4, 10; Dkt. 177-53 at 4-9; Dkt. 177-54 at 4-5.

*Matousek*, 51 F.4th at 280-81; *see also Pizarro*, 111 F.4th at 1180.

The only apples-to-apples comparison that Plaintiff offers for the Russell TDFs is to their custom TDF benchmark.  Dkt. 273 at 19; *see Pizarro*, 111 F.4th at 1180 ("Home Depot's investment consultant . . . benchmarked each [target date] fund against a custom index . . . creating an apples-to-apples comparison."); *see also Cutrone*, 2025 WL 306179, at *9 (citing *Pizarro* and endorsing an "apples-to-apples comparison" between TDFs and custom benchmarks, which "more accurately captures whether the TDFs were performing in line with their specific objectives").  But at the time the Russell TDFs were added to the Plan's investment lineup, their returns exceeded the returns of the corresponding benchmark.  Dkt. 273 at 19; Dkt. 177-57 at 9-11.  There is no dispute about this—even Plaintiff herself acknowledges that, at the time Russell was selected, the Russell TDFs had "performed in line with, ***and in many cases outperformed***, their respective composite benchmarks since inception[.]"  Dkt. 180 ¶ 34 (emphasis added); Dkt. 190 ¶ 34.

To the extent there was some underperformance later in the "less than four-year class period," it was modest, ranging from 0.38% to 0.97%.  Dkt. 273 at 20 n.9; *see also* Dkt. 177-57 at 9-11, 13.  As the District Court held, it is well established that such minor differences in performance over a relatively short period of time are insufficient as a matter of law to support an imprudence claim.  Dkt. 273 at 20 ("Without more, then, the Court agrees with other courts that have found that, to trigger a finding of objective imprudence, 'the comparative underperformance must generally be

23

"consistent" and "substantial" to support an inference of imprudence.") (citing *Gonzalez*, *Cho*, and *Forman*); *see, e.g.*, *Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, 164 (E.D.N.Y. 2022) (finding that rolling three-year and five-year underperformance ranging from 0.32% to 2.57% was "not the type of substantial underperformance . . . that gives rise to a plausible inference that a prudent fiduciary would have removed these funds from the plan's menu of options"); *Cho v. Prudential Ins. Co. of Am.*, No. 2:19-cv-19886, 2021 WL 4438186, at *9 (D.N.J. Sept. 27, 2021) (dismissing claims because alleged underperformance was not "sufficiently substantial[,]" where highest rate of underperformance was 3.71%); *Forman v. TriHealth, Inc.*, 563 F. Supp. 3d 753, 764 (S.D. Ohio 2021) (finding underperformance ranging from 1.00% to "just over" 2.00% was "simply too small to raise a plausible breach of the fiduciary duty claim"), *aff'd in relevant part*, 40 F.4th 443 (6th Cir. 2022); *Birse v. CenturyLink, Inc.*, No. 17-cv-02872, 2019 WL 1292861, at *5 (D. Colo. Mar. 20, 2019) (rejecting claim based on underperformance averaging 2.11% over five years).

Indeed, even if the Russell TDFs had underperformed the ***entire*** time they were offered in the Plan, "three to five years . . . are still considered relatively short periods of underperformance." *Dorman v. Charles Schwab Corp.*, No. 4:17-cv-00285, 2019 WL 580785, at *3, *6 (N.D. Cal. Feb. 8, 2019) (dismissing allegations that a fund "persistently and/or materially underperformed" for three to five years because such allegations did not support an inference of imprudence); *see also Davis v.*

*Salesforce.com, Inc.*, No. 3:20-cv-01753, 2020 WL 5893405, at *4 (N.D. Cal. Oct. 5, 2020) (dismissing imprudence claim where plaintiff alleged that certain investments underperformed over a five-year period); *Patterson v. Morgan Stanley*, No. 1:16-cv-06568, 2019 WL 4934834, at *10 (S.D.N.Y. Oct. 7, 2019) (finding that "consistent, ten-year underperformance may support a duty of prudence claim," if the underperformance is "substantial").   This is particularly true for a long-term investment like a TDF: "[m]erely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision." *Smith*, 37 F.4th at 1166.

Because the Russell TDFs' performance "closely matched" Russell's custom TDF benchmark "throughout the entire class period," the Russell TDFs were an objectively prudent investment option. *See Pizarro*, 111 F.4th at 1180 (holding that because "BlackRock's target date funds' three- and five-year returns closely matched these custom indexes throughout the entire class period. . . . the plaintiffs cannot show that a prudent fiduciary would not have also retained these funds[.]").   Indeed, the court in *Cutrone* recently granted summary judgment to the plan defendants for this precise reason—under nearly identical circumstances—following this Court's reasoning in *Pizarro*:

> In lieu of the expert's "apples and oranges" comparator TDFs, the court in *Pizarro* found it more relevant that the challenged TDFs' returns closely matched BlackRock's custom indexes that had glidepaths and asset allocations similar to BlackRock's offerings.  The same is true of

this case: Although Northern Trust's TDFs may have underperformed compared to the broader universe of TDF offerings, they almost always performed within a +/- 20 basis tracking band of their custom benchmarks. This "apples-to-apples comparison" more accurately captures whether the TDFs were performing in line with their specific objectives.

*Cutrone*, 2025 WL 306179, at *9 (citing *Pizarro*, 111 F.4th at 1180).

This Court should, accordingly, affirm the District Court's decision that Plaintiff did not meet her burden of showing that the Russell TDFs were objectively imprudent.

### b.   Plaintiff's Assertion That She Can Demonstrate Objective Prudence by Relying on an "Apples and Oranges" Comparison is Inconsistent with *Pizarro*.

While Plaintiff correctly recognizes that she must "identify[] proper comparators" in order to satisfy her burden of proof, Opening Brief at 40, she attempts to circumvent *Pizarro*'s rejection of comparisons that are "apples and oranges" due to key differences in investment objectives.

In particular, Plaintiff argues that the Vanguard TDFs are an appropriate comparator for the Russell TDFs simply because they were previously included in the Plan. Opening Brief at 41-42. But this argument misses the mark because Plaintiff conflates **calculations of loss** with her burden to prove **loss causation**, i.e., objective prudence—as is clear from the inapposite caselaw she relies on. *Id.*; *see* Dkt. 187 at 16-19. In other words, Plaintiff is skipping a step. She must **first** establish both procedural imprudence **and** objective imprudence **before** the element of loss—and the

caselaw Plaintiff cites—becomes relevant to the equation.[9]

As discussed above, an "apples and oranges" comparison to other TDFs with different investment strategies, "glide paths," and "risk-return profiles" is insufficient to establish loss causation, i.e., objective imprudence. *Pizarro*, 111 F.4th at 1180; *see also Cutrone*, 2025 WL 306179, at *8-9 ("[A] TDF's underperformance compared to other funds is insufficient to allege, let alone prove, objective imprudence," and "courts . . . have decided as a matter of law that an 'apples to oranges comparison cannot establish objective imprudence."). Accordingly, Plaintiff's attempt to compare the Russell TDFs to the Vanguard TDFs that they replaced (and the American Funds TDFs that replaced them) is insufficient, as a matter of law, to meet Plaintiff's burden of establishing that the Russell TDFs were objectively imprudent—just like in *Pizarro*. *See supra* Argument Section I.a.

Plaintiff's only response to *Pizarro*'s—and more generally, ERISA black letter law's—rejection of "apples and oranges" comparisons is to argue that it does not apply in this case because the "oranges" here, i.e., the Vanguard TDFs and American Funds TDFs, were previously included in or later added to the Plan, while the "oranges" in

---

[9] Plaintiff's attempt to argue that *any* amount of underperformance by the Russell TDFs as compared to Russell's custom TDF benchmark is sufficient to establish that the Russell TDFs were objectively imprudent suffers from the same problem, i.e., it conflates calculations of loss with her burden of proving loss causation. *See* Opening Brief at 45-46. *Multiple* courts have held that TDFs were objectively prudent where they closely tracked their custom TDF benchmark—just as the Russell TDFs did here. *See supra* Argument Section I.a.

*Pizarro* and other decisions were not.  Opening Brief at 42-43.  But a "meaningful benchmark," *Matousek*, 51 F.4th at 280, in evaluating objective prudence does ***not*** turn on whether the proffered comparator funds were also "chosen by the plan's fiduciaries" at some point in time.  Opening Brief at 42 n.13.

Rather, in order for there to be a "sound basis for comparison—a meaningful benchmark"—the challenged fund and the comparator funds must "hold similar securities, have similar investment strategies, and reflect a similar risk profile." *Matousek*, 51 F.4th at 280-281.  Regardless of the fact that the Comparator TDFs were included in the Plan before and after the Russell TDFs, they do not provide an "apples-to-apples comparison" that could support a conclusion that no hypothetical prudent fiduciary would have selected and retained the Russell TDFs in light of the key differences in their investment objectives that even Plaintiff acknowledges, including: (i) active versus passive management; (ii) glide path; and (iii) asset allocation—just like *Pizarro*.  *See supra* Argument Section I.a.[10]

Indeed, in her Opening Brief, Plaintiff concedes that "apples-to-oranges comparisons" are "disfavored."  Opening Brief at 44.  She attempts to distract from this undisputed fact by taking the self-serving position that this case presents "the

---

[10] While Plaintiff criticizes the District Court for "relying on inapposite caselaw" about "the inferences that can be drawn from bare allegations of underperformance" "at the motion-to-dismiss stage," Opening Brief at 42-43 n.13, "[s]he fails, however, to explain why, with respect to this issue, the procedural posture of the case matters.  If anything, to the extent factual allegations are deemed insufficient to state a claim at the motion-to-dismiss stage, evidence supporting those allegations would be considered even less compelling at the summary-judgment stage."  Dkt. 273 at 20.

unusual scenario" because Plaintiff's expert opined that the Investment Committee should have been making such comparisons. *Id.* In doing so, Plaintiff blatantly ignores established law. "***The assessment that [] fiduciaries must do to select [and monitor] a product is different from the comparison courts must do when assessing whether plaintiffs have stated a plausible cause of action.*** [C]ourts cannot, and should not, compare apples to oranges when determining a meaningful benchmark for performance"—regardless of what performance comparisons the fiduciaries actually made (or should have made, according to Plaintiff's expert). *Luckett v. Wintrust Fin. Corp.*, No. 1:22-cv-03968, 2024 WL 3823175, at *4 (N.D. Ill. Aug. 14, 2024) (emphasis added).

Plaintiff's argument is just a thinly veiled attempt to argue that the Russell TDFs were ***objectively*** imprudent because the Investment Committee was ***procedurally*** imprudent in selecting them. *See* Opening Brief at 43 ("[T]he question is whether a prudent fiduciary, ***informed by a thorough investigation***, would have chosen to discard [Vanguard's and American Funds'] prudent 'apples' and replace them with Russell's 'oranges.'" (emphasis added)); *see id.* ("[T]his case is focused on information regarding the Russell TDFs that 'was available and should have been sought by' Defendants ***through a prudent investigation*** before deciding to replace the Plan's legacy Vanguard TDFs." (emphasis added)); *id.* at 44 (quoting Plaintiff's expert's opinion that the Investment Committee's process was flawed because it should have been comparing the Russell TDFs to other TDFs with different

characteristics).  Again, that is not the law.  *See supra* Argument Section I.a.

The District Court applied the correct legal standard for breach of fiduciary duty claims under ERISA, and this Court should reject Plaintiff's desperate attempt to overcome the objective prudence requirement embraced by *Pizarro*.

## II.    Plaintiff's Remaining Arguments Are Unavailing.

### a.    Plaintiff Repeatedly Conflates Procedural Prudence and Objective Prudence.

Unable to show that the Russell TDFs were objectively imprudent via the "apples-to-apples comparison" required by *Pizarro*, Plaintiff next argues for an incredulous interpretation of the objective prudence standard that,  as the District Court correctly recognized, "would . . . defeat[] the whole purpose of the objective-prudence prong of the inquiry[.]"  Dkt. 273 at 18-19.

In particular, Plaintiff claims that the District Court was required to consider the **subjective** investment objectives of the Committee in determining whether the Russell TDFs were **objectively** prudent.  Opening Brief at 27-30.  This Court's decision in *Pizarro* says no such thing.[11]  Rather, this Court's analysis makes clear that it is the

---

[11] Nor do the other cases that Plaintiff cites (*GIW Industries, Inc.*, *Tatum*, and *Bussian*). Each case was discussing **procedural** prudence, which is clear from the full context that Plaintiff omitted from her cherry-picked snippets.  *See, e.g.*, *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 358 (4th Cir. 2014) ("The evaluation is not a general one, but rather must 'depend on the character and aim of the particular plan and decision at issue and the circumstances prevailing at the time.' . . . Of course, a prudent fiduciary need not follow a uniform checklist.  Courts have found that a variety of actions can support a finding that a fiduciary acted with **procedural prudence**[.]" (emphasis added)).

purpose and aims of the **selected investment at issue** that are relevant. *See Pizarro*, 111 F.4th at 1181 ("Home Depot offered the stable value fund because it was conservative, advertised it as conservative, and benchmarked it against a conservative metric. **Because the fund met the expectations set for it**, the plaintiffs' breach-of-fiduciary-duty claim relying on comparisons to other, more aggressive benchmarks fail." (emphasis added)).[12]

The entire purpose of the "objective prudence" prong is to determine when the subjective process employed by a plan fiduciary should result in liability, as "an imprudent process can sometimes yield a prudent investment[,]" whether "through prayer, astrology or just blind luck." *Id.* at 1176. But as the District Court correctly identified, "Johnson's understanding would [] collapse the analysis of the fiduciary's *process* into the evaluation of the objective *result* of that process, defeating the whole purpose of the objective-prudence prong of the inquiry[.]" Dkt. 273 at 18-19. This

---

[12] Even if Plaintiff was correct, she misstates the Committee's actual goals. The only "evidence" in support of her opinion are: (i) characterizations in an internal **Russell** document made by a single **Russell** employee, Stacey Bro, who was frustrated that members of the Investment Committee were pressing her about the performance of the Russell TDFs **post-selection**; and (ii) the deposition testimony of a single Committee member—who wasn't even on the Investment Committee until **after** the Russell TDFs were added to the Plan—that "I don't disagree" when Plaintiff's counsel read him what Ms. Bro wrote. Dkt. 191-36 at 15600 (internal Russell memorandum dated October 2016); Dkt. 186-5 at 18; Dkt. 177-12 at 3. In doing so, **Plaintiff ignores direct evidence of the Committee's investment approach**: the White Oak report, which noted that the Investment Committee was "[c]onservative" and "risk-consc[ious]," prioritizing "more stable returns, greater equity diversification, and lower downside correlation"—consistent with Russell's and the Russell TDFs' investment philosophies and strategies. Dkt. 177-39 at 25-26; *see supra* p. 11.

would create a world where the ***same investment option*** may be considered objectively prudent ***and*** imprudent depending on the subjective objectives of the plan fiduciary who selected it—an untenable result that Plaintiff openly endorses. *See* Opening Brief at 26-27 ("Thus, the appropriate question is not whether the Russell TDFs were an imprudent choice for *every* plan, but whether a prudent fiduciary managing *this Plan* would have selected the Russell TDFs in light of the Plan's character and aims.").[13]

The circular nature of Plaintiff's logic is on full display. She simply claims that "no prudent fiduciary managing any 401(k) plan would retain the Russell TDFs" like the Investment Committee did—i.e., the Russell TDFs were objectively imprudent— due to a number of supposed flaws in the Committee's ***process***. *See* Opening Brief at 33-35. But Plaintiff says nothing about whether the Russell TDFs, separate and apart from that process, were objectively imprudent.[14] In other words, Plaintiff's view of

---

[13] Plaintiff's position would also require the Royal Caribbean Defendants to show that a hypothetical prudent fiduciary standing in the Investment Committee's shoes "would have also made the same choice." *Pizarro*, 111 F.4th at 1177 n.4. But as this Court noted in rejecting the same argument in *Pizarro*, "requiring a defendant to prove that a hypothetical prudent fiduciary would have also made the same choice 'ignore[s] the fact that there is not one and only one "same decision" that qualifies as objectively prudent.'" *Id.* "Because a fiduciary will not be able to make that showing, [such a] rule would impose liability on a fiduciary even though it made an objectively prudent choice—completely contrary to ERISA's loss causation requirement." *Id.* The court in *Cutrone* rejected Plaintiff's position for precisely the same reasons, finding this Court's reasoning in *Pizarro* to be "persuasive." *Cutrone*, 2025 WL 306179, at *5-6.

[14] Tellingly, many of the same arguments are found under headings related to ***procedural*** prudence in Plaintiff's Opposition to the Royal Caribbean Defendants' Motion for Summary Judgment. *Compare* Opening Brief at 27-36, *with* Dkt. 187 at 20-22. Regardless, Plaintiff's criticisms of the Royal Caribbean Defendants' process in selecting and retaining Russell and the Russell TDFs are unsupported by the

the world boils down to a conclusion that the Russell TDFs were ***objectively*** imprudent because the Investment Committee was ***procedurally*** imprudent in selecting them.

That is not the law.  "[L]iability turns not only on an imprudent process, but also on that process ***resulting*** in an imprudent investment."  *Pizarro*, 111 F.4th at 1176 (emphasis added).  The District Court correctly rejected Plaintiff's attempt to rely on the same "plethora of evidence" she rehashes on appeal to show that the Russell TDFs were objectively imprudent:

> Lastly, Johnson turns to what she calls a "plethora of evidence" to show that no prudent fiduciary would have hired Russell or selected or retained the Russell funds.  The evidence she points to includes that Royal Caribbean (1) hired Russell "against attorney advice"; (2) "put 80% of the Plan's assets in an unpopular TDF with less than $1.5 billion" in assets under management; (3) selected assets "performing in the bottom quartile of their peers"; (4) selected assets "managed by a disfavored TDF management team with a near bottom ranking among investment management team with a near bottom ranking among investment management firms"; and (5) replaced "a highly popular gold-rated TDF, with $191 billion in AU/M, performing in the top percentiles among its peers, managed by a top ranked investment management firm."  Johnson also points to an alleged "mismatch between Russell's preferred strategy and Royal Caribbean's investment objectives" along with internal Russell documents describing the TDFs' performance as "uncompetitive," "disappointing," "god awful," and "horrific."  Even if all these allegations were supported by the record—***they are not***—they nonetheless miss the mark. . . .  ***The evidence recounted above simply rehashes Johnson's complaints about Royal Caribbean's allegedly faulty selection and retention process and Russell's alleged internal missteps***; none of it establishes that the resulting investment itself was objectively imprudent.

---

record—as the District Court held, Dkt. 273 at 21—which instead establishes that the Royal Caribbean Defendants engaged in precisely the prudent process that ERISA requires.

Dkt. 273 at 21 (emphasis added).[15]

Accordingly, this Court should reject Plaintiff's flawed interpretation of *Pizarro*'s objective prudence standard, which is contrary to the actual language of *Pizarro*, creates conflicting outcomes for different fiduciaries who made the same investment decision, and effectively ignores ERISA's object prudence requirement.

> **b.    Plaintiff's Argument that *Pizarro* Should Be Limited to Its Exact Facts is Unpersuasive.**

Plaintiff's final line of defense is to argue that "the district court ignored the facts that distinguish this case from *Pizarro*."  Opening Brief at 37.  Plaintiff's claim falls flat.

***First***, the Opening Brief asserts that this case is "categorically different" than *Pizarro* because "Plaintiff's theory of breach" is that the Russell TDFs were selected through an imprudent process and imprudently retained, while the BlackRock TDFs in *Pizarro* were "selected through a prudent process" but imprudently retained  *Id.* at 37-38.  This criticism relates solely to ***procedural*** prudence, not ***objective*** prudence. As discussed above, Plaintiff must prove ***both***.

_____

[15] For example, Plaintiff continues to rely on Morningstar's ratings of the Vanguard TDFs and the mutual fund version of the Russell TDFs—not the collective investment trust version the Plan used, which Plaintiff's expert, Mr. Stone, acknowledged differed in key respects, including different underlying funds and fund managers—but Mr. Stone testified that institutional advisors do not even use Morningstar's ratings— himself included. *See* Opening Brief at 28; Dkt. 197-3 at 17-19, 20.  As another example, while Plaintiff points to the Russell TDFs' peer performance, comparisons between TDFs with different investment objectives are "apples and oranges," and "there is no reason to expect them to make similar returns over any given span of time," as discussed above.  *See supra* Argument Section I.a.

***Second***, the Opening Brief claims that none of the "four undisputed factors [that] supported the conclusion that retaining the BlackRock TDFs in the Home Depot plan was objectively prudent . . . apply here." Opening Brief at 38. But the "four undisputed factors" that Plaintiff points do not invalidate the District Court's decision here.

For example, Plaintiff claims that "Russell's fees were high relative to peers, and the Plan overpaid for the Russell TDFs," while "BlackRock charged among the lowest fees of TDF providers" and "Home Depot negotiated 'at least three concessions from BlackRock during the Class Period.'" Opening Brief at 38-39. As the District Court correctly recognized, however, ***nowhere*** in the Amended Complaint does Plaintiff allege that the Russell TDFs' fees were too high relative to other comparable TDF options—nor does the record support this contention. Dkt. 273 at 21 n.11.[16]

Similarly, Plaintiff asserts that "[t]he Russell TDFs consistently and substantially underperformed before their selection and throughout the Class Period, even after adjusting for risk," while "'the BlackRock TDFs tracked their custom

---

[16] Tellingly, Plaintiff's only citation in support of Russell's purportedly high fees earlier in her brief is to an internal Russell document from ***March 2018*** stating that "fees are ***now*** high relative to peers." Dkt. 191-9 at 211408 (emphasis added). And the fact that the passively managed Vanguard TDFs previously included in the Plan were cheaper than the Russell TDFs, which used both active and passive funds, is entirely unsurprising given that passive funds are generally less expensive than active funds. Dkt. 177-57 at 7-8; Dkt. 197-6 at 3; *see also B. Braun Med., Inc.*, 2023 WL 5339620, at *4. Regardless, "[n]othing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund," *Pizarro*, 111 F.4th at 1178, and the Committee did in fact negotiate better pricing with Russell during the 2014-15 RFP process. Dkt. 177-34 at 9.

benchmark based on annualized returns during the Class Period,' . . . and 'matched [the returns] of their peers and market benchmarks almost perfectly' when adjusted for risk." Opening Brief at 38. Plaintiff's argument is belied by her concessions that: (i) her Comparator TDFs "'are designed for different purposes and thus choose their investments differently' than the Russell TDFs, '*so there is no reason to expect them to make similar returns over any given span of time*'"; (ii) at the time Russell was selected, the Russell TDFs had "performed in line with, *and in many cases outperformed*, their respective composite benchmarks since inception"; and (iii) "'[t]he Russell TDFs' underperformance relative to their benchmark *was not significant during the Class Period*.'" *See supra* Argument Section I.a.

To the extent Plaintiff suggests that, in addition to "closely match[ing] these custom indexes through the entire class period," *Pizarro* also requires that the Russell TDFs' "returns matched those of their peers and market benchmarks" *on a risk-adjusted basis* in order to be objectively prudent, *Pizarro* says nothing of the sort. *Pizarro*, 111 F.4th at 1180. Indeed, *Pizarro* did not embrace Plaintiff's approach of risk-adjusting the returns of markedly different TDFs in an attempt to make them comparable, but rather, stated that "*when adjusting for these glide path choices*," the returns of the TDFs at issue "matched those of their peers and market benchmarks almost perfectly"—i.e., *peers and market benchmarks with a similar glide path*. *Id.* (emphasis added). In evaluating the objective prudence of the JPMorgan Stable Value Fund and TS&W Small Cap Value Fund, this Court similarly said *nothing* about those

36

funds' performance compared to "their peers and market benchmarks" on a risk-adjusted basis. *See Pizarro*, 111 F.4th at 1180-81.

> Moreover, the Ninth Circuit recently rejected Plaintiff's exact argument:
>
> Nor does Anderson's "risk-adjusted" analysis suffice. He alleges that the Intel funds had a greater "risk per unit of return" than did other target-date funds. ***But an ERISA plaintiff cannot make incomparable funds comparable simply by using a ratio.*** The "risk-adjusted" analysis does not allege that any funds with comparable risk profiles and greater returns ***actually existed***; it only speculates that ***if*** a fund with a comparable risk profile had followed the trend of other, presumably riskier, funds, it would have generated higher returns than the Intel funds did.

*Anderson v. Intel Corp. Inv. Policy Comm.*, 137 F.4th 1015, 1025 (9th Cir. 2025) (emphasis added).[17]

Plaintiff's two remaining "undisputed factors"—the popularity of the investment options at issue and whether an independent investment consultant recommended them—fare no better. Opening Brief at 38-39. Like much of Plaintiff's appeal—and as the District Court correctly recognized—these arguments "simply rehash[] Johnson's complaints about Royal Caribbean's allegedly faulty selection and retention process and Russell's alleged internal missteps; none of it establishes that the resulting investment itself was objectively imprudent." Dkt. 273 at 21. While this

---

[17] Even if Plaintiff could establish objective imprudence based on risk-adjusted returns, Plaintiff's own expert demonstrated that the Comparator TDFs took ***more*** risk during the Class Period and, unsurprisingly, had ***higher*** returns than the Russell TDFs. *See* Dkt. 186-6 at 13-14 (showing that the American Funds TDFs took 8.25% risk and had 10.63% returns, the Vanguard TDFs took 8.42% risk and had 9.76% returns, and the Russell TDFs took 7.74% risk and had 8.18% returns). Accordingly, even with risk-adjusting these returns, the difference in performance is not meaningful enough to support an imprudence claim as a matter of law. *See supra* Argument Section I.a.

Court did reference that the TDFs at issue in *Pizarro* were "popular options offered by other employers' plans," it did so in a single sentence before it reached the heart of its analysis: whether the plaintiffs' comparators provided "an apples-to-apples comparison" from which it could be inferred that the challenged TDFs were objectively imprudent. *Pizarro*, 111 F.4th at 1180. And as was the case with Plaintiff's "risk-adjusted returns" argument, *Pizarro* similarly said **nothing** about either of these two "undisputed factors" in evaluating the objective prudence of the JPMorgan Stable Value Fund and TS&W Small Cap Value Fund (and in fact, only the district court in *Pizarro* said anything about the latter with respect to the BlackRock TDFs). *See Pizarro*, 111 F.4th at 1180-1181.

Plaintiff's attempts to distinguish *Pizarro* are unavailing, and this Court should uphold the District Court's faithful application of it here.

## CONCLUSION

For the reasons stated above, the Royal Caribbean Defendants request that this Court affirm the District Court's grant of summary judgment.[18]

---

[18] The Royal Caribbean Defendants do not take a position as to the arguments made solely against Russell. *See* Opening Brief at 46-53. In the event that this Court agrees with Plaintiff and vacates the District Court's grant of summary judgment, it should remand this case back to the District Court to consider the Royal Caribbean Defendants' additional arguments in support of their motion for summary judgment, including procedural prudence, in the first instance. *See Copeland v. Ga. Dep't of Corr.*, 97 F.4th 766, 780-81 (11th Cir. 2024) ("GDOC argued below that it was not responsible for the hostile work environment because it took prompt action to address the harassment. Because the district court found that the harassment was not sufficiently severe and pervasive, it did not address this element, and GDOC has not briefed it on appeal. Under these circumstances, we decline to address it in the first

---

instance.  After all, 'we are a court of review, not a court of first view.'  Instead, we vacate the grant of summary judgment on Count I and leave it to the district court to address this fifth element on remand." (internal citation omitted)).

Date: July 14, 2025                    Respectfully submitted,

                                       **GROOM LAW GROUP, CHARTERED**

                                       */s/ Lars C. Golumbic*
                                       Lars C. Golumbic
                                       William J. Delany
                                       Samuel I. Levin
                                       Larry M. Blocho Jr.
                                       Richard A. Smith, Jr.
                                       1701 Pennsylvania Ave., NW
                                       Suite 1200
                                       Washington, DC 20006
                                       Telephone: (202) 861-6615
                                       lgolumbic@groom.com
                                       wdelany@groom.com
                                       slevin@groom.com
                                       lblocho@groom.com
                                       rsmithjr@groom.com

                                       *Attorneys for Defendants-Appellees Royal*
                                       *Caribbean Cruises Ltd. and the Royal*
                                       *Caribbean Cruises Ltd. Investment*
                                       *Committee*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this motion contains 10,316 words (cannot exceed 13,000 words), excluding the parts exempted by Rule 32(f). This motion complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Lars C. Golumbic*
Lars C. Golumbic

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all parties of record.

*/s/ Lars C. Golumbic*
Lars C. Golumbic