No. 25-10692

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

Ann Johnson, as the representative of a class of similarly situated persons, and on behalf of the Royal Caribbean Cruises Ltd. Retirement Savings Plan,

*Plaintiff-Appellant*,

v.

Russell Investments Trust Company (F/K/A Russell Trust Company), Royal Caribbean Cruises Ltd., and Royal Caribbean Cruises Ltd. Investment Committee,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Southern District of Florida
No. 1:22-CV-21735-RNS
Hon. Robert N. Scola, Jr.

_____

## APPELLANT'S REPLY BRIEF

_____

Paul J. Lukas
Brock J. Specht
Benjamin J. Bauer
NICHOLS KASTER, PLLP
4700 IDS Center
80 S 8th Street
Minneapolis, MN 55402
(612) 256-3200

Brandon J. Hill
WENZEL FENTON CABASSA, P.A.
1110 North Florida Avenue
Suite 300
Tampa, FL 33602
(813) 337-7992

*Attorneys for Appellant Ann Johnson*

## NO. 25-10692
## Ann Johnson v. Russell Investments Trust Company, et al.

### CERTIFICATE OF INTERESTED PERSONS

Pursuant to Eleventh Circuit Rule 26.1.2(c), the undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case.

1.   Aberg, Peter

2.   Ackerman, David P., Counsel for Appellee Russell Investments Trust Company

3.   Akerman LLP, Counsel for Appellee Russell Investments Trust Company

4.   Austin, Mackenzie, Counsel for Appellee Russell Investments Trust Company

5.   Bauer, Benjamin J., Counsel for Appellant

6.   Berlinski, Milton

7.   Blocho Jr., Larry M., Counsel for Appellees Royal Caribbean Cruises Ltd. and Royal Caribbean Cruises Ltd. Investment Committee

8.   Brindis, Benjamin S., Counsel for Appellee Russell Investments Trust Company

9.   Charris, Daniela, Counsel for Appellee Russell Investments Trust Company

10.  Chulack, Alexander

C1 of 4

**NO. 25-10692**
**Ann Johnson v. Russell Investments Trust Company, et al.**

11.     Delaney, William J., Counsel for Appellees Royal Caribbean Cruises Ltd. and Royal Caribbean Cruises Ltd. Investment Committee

12.     DeMaio, David M., Counsel for Appellees Royal Caribbean Cruises Ltd. and Royal Caribbean Cruises Ltd. Investment Committee

13.     Elias, Blaine, Counsel for Appellee Russell Investments Trust Company

14.     Golumbic, Lars J., Counsel for Appellees Royal Caribbean Cruises Ltd. and Royal Caribbean Cruises Ltd. Investment Committee

15.     Groom Law Group, Chartered, Counsel for Appellees Royal Caribbean Cruises Ltd. and Royal Caribbean Cruises Ltd. Investment Committee

16.     Hamilton Lane Advisors, L.L.C.

17.     Hamilton Lane, Inc. ("HLNE")

18.     Havemann, William, Counsel for Appellee Russell Investments Trust Company

19.     Hershon, Bradley J., Counsel for Appellee Russell Investments Trust Company

20.     Hill, Brandon J., Counsel for Appellant

21.     Hora, Robert C., Counsel for Appellee Russell Investments Trust Company

22.     Hughes, John J., Counsel for Appellee Russell Investments Trust Company

23.     Johnson, Ann, Appellant

C2 of 4

**NO. 25-10692**
**Ann Johnson v. Russell Investments Trust Company, et al.**

24.    Kammerman, Joseph J., Counsel for Appellee Russell Investments Trust Company

25.    Kempf, Allison N., Counsel for Appellee Russell Investments Trust Company

26.    Ko, Healy, Counsel for Appellee Russell Investments Trust Company

27.    Levin, Samuel I., Counsel for Appellees Royal Caribbean Cruises Ltd. and Royal Caribbean Cruises Ltd. Investment Committee

28.    Lukas, Paul, Counsel for Appellant

29.    Marin, Mario O., Counsel for Appellee Russell Investments Trust Company

30.    Mattei, Alana, Counsel for Appellee Russell Investments Trust Company

31.    Milbank, LLP, Counsel for Appellee Russell Investments Trust Company

32.    Murphy, Sean M., Counsel for Appellee Russell Investments Trust Company

33.    Nichols Kaster, PLLP, Counsel for Appellant

34.    Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Counsel for Appellees Royal Caribbean Cruises Ltd. and Royal Caribbean Cruises Ltd. Investment Committee

35.    Paz, Alejandro J., Counsel for Appellee Russell Investments Trust Company

36.    Reverence Capital Partners, L.P.

**NO. 25-10692**

**Ann Johnson v. Russell Investments Trust Company, et al.**

37.  Royal Caribbean Cruises Ltd. ("RCL"), Appellee

38.  The Royal Caribbean Cruises Ltd. Investment Committee, Appellee

39.  Russell Investments Group, Ltd.

40.  Russell Investments Trust Company, Appellee

41.  The Honorable Robert N. Scola, Jr., U.S. District Court Judge

42.  Smith Jr., Richard A., Counsel for Appellees Royal Caribbean Cruises Ltd. and the Royal Caribbean Cruises Ltd. Investment Committee

43.  Specht, Brock J., Counsel for Appellant

44.  TA Associates Cayman, Ltd.

45.  TA Associates Management, L.P.

46.  Wenzel, Fenton, Cabassa, P.A., Counsel for Appellant

TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.....................................................C-1

TABLE OF CONTENTS ............................................................................................i

TABLE OF CITATIONS......................................................................................... iii

INTRODUCTION ......................................................................................................1

ARGUMENT .............................................................................................................1

I.     THE DISTRICT COURT COMMITTED LEGAL ERROR IN ITS
ANALYSIS OF CAUSATION ........................................................................1

     A. Comparing the Russell TDFs to their custom benchmark does not
establish that they were objectively prudent investments for *this* Plan .....3

     B. To determine loss causation, a court must consider whether the
challenged investments fall within the range of reasonable outcomes
which may have resulted from a prudent process ....................................5

     C. A court must consider the Plan's particular circumstances ......................9

     D. Comparator evidence is not required to establish loss causation.............12

II.    A REASONABLE FACTFINDER COULD CONCLUDE THAT ROYAL
CARIBBEAN DEFENDANTS' BREACHES CAUSED LOSSES TO THE
PLAN ...........................................................................................................14

     A. Plaintiff offered evidence that a prudent fiduciary would not have
selected the Russell TDFs ........................................................................14

        1. Plaintiff offered evidence that the Russell TDFs were inconsistent
with the Plan's goals.........................................................................14

        2. Plaintiff offered evidence that the Russell TDFs were a poor fit for
the Plan generally.............................................................................16

3.  Plaintiff offered evidence that fiduciaries conducting proper investigations rejected the Russell TDFs ......................................18

4.  Plaintiff offered evidence that Royal Caribbean Defendants ignored independent advice...........................................................19

B.  The district court erred by refusing to consider evidence related to the Vanguard and American Funds TDFs  ....................................................20

CONCLUSION ......................................................................................................26

CERTIFICATE OF COMPLIANCE ..................................................................*post*

ii

TABLE OF CITATIONS

## Cases

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
   137 F.4th 1015 (9th Cir. 2025)....................................................11, 13, 14, 25

*Brotherston v. Putnam Invs.*,
   907 F.3d 17 (1st Cir. 2018) ..............................................................................6

*Cutrone v. Allstate Corp.*,
   No. 20 CV 6463, 2025 WL 306179 (N.D. Ill. Jan. 27, 2025) .............7, 15, 25

*Donovan v. Bierwirth*,
   754 F.2d 1049 (2d Cir. 1985)..........................................................................14

*Fink v. National Savings & Trust Company*,
   772 F.2d 951 (D.C. Cir. 1985) .............................................................6, 7, 11

* *GIW Industries, Inc. v. Trevor, Stewart, Burton & Jacobsen, Inc.*,
   895 F.2d 729 (11th Cir. 1990)........................................ 4, 6, 7, 10, 12, 13, 14

*Harris v. Reverse Mortg. Sols. Inc.*,
   800 F. App'x 708 (11th Cir. 2020)....................................................................9

*Herman v. NationsBank Tr. Co., (Georgia)*,
   126 F.3d 1354 (11th Cir. 1997) .....................................................................25

*Hughes v. Nw. Univ.*,
   595 U.S. 170 (2022)..................................................................................1, 2, 4

*In re Unisys Savings Plan Litigation*,
   74 F.3d 420 (3d Cir. 1996)................................................8, 9, 11, 12, 13, 20

*Jenkins v. Yager,*
   *444 F.3d 916 (7th Cir. 2006)*...........................................................................6

*Lauderdale v. NFP Ret., Inc.*,
   No. 821CV00301JVSKES, 2024 WL 751005 (C.D. Cal. Feb. 23, 2024) ....16

iii

*Oncale v. Sundowner Offshore Servs., Inc.*,
    523 U.S. 75 (1998)......................................................................................9, 10

*Pizarro v. Home Depot, Inc.*,
    634 F. Supp. 3d 1260 (N.D. Ga. 2022).........................................................3

*\*Pizarro v. Home Depot, Inc.*,
    111 F.4th 1165 (11th Cir. 2024)..........1, 2, 3, 4, 6, 7, 8, 10, 11, 18, 22, 23, 25

*Roth v. Sawyer-Cleator Lumber Co.*,
    16 F.3d 915 (8th Cir. 1994).....................................................................1, 6, 8

*Tatum v. RJR Pension Inv. Comm.*,
    761 F.3d 346 (4th Cir. 2014)...................................................................6, 25

*United States v. Gray*,
    367 F.3d 1263 (11th Cir. 2004).....................................................................9

## Rules, Regulations, and Statutes

29 U.S.C. § 1104(a)(1)(B).........................................................................11

## INTRODUCTION

Defendants-Appellees Royal Caribbean Cruises Ltd. and the Royal Caribbean Cruises Ltd. Investment Committee (collectively, "Royal Caribbean Defendants") argue that this appeal involves a straightforward application of this Court's decision in *Pizarro v. Home Depot, Inc.*, 111 F.4th 1165 (11th Cir. 2024) (hereinafter *Pizarro II*). Plaintiff-Appellant Ann Johnson ("Plaintiff") does not disagree.

As this Court recognized in *Pizarro II*,

> To recover damages … plaintiffs must show that the investments made were not objectively prudent. That means they must have fallen outside the "range of reasonable judgments a fiduciary may make based on her experience and expertise," such that a hypothetical prudent fiduciary in the same circumstances as the defendant, armed with the information that a proper evaluation would have yielded, would not (or could not) have made the same choice.

111 F.4th at 1176 (quoting *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022)). Nonetheless, the district court failed to consider evidence showing that a prudent fiduciary in Royal Caribbean Defendants' position would not have selected the Russell TDFs. Accordingly, the district court misapplied *Pizarro II*.

## ARGUMENT

### I.    The district court committed legal error in its analysis of causation.

"[T]he causal connection between breach and loss … is a fact-intensive inquiry" that "require[s] taking into account everything that the [fiduciary] *should have known* at the time of their decision." *Roth v. Sawyer-Cleator Lumber Co.*, 16

1

F.3d 915, 919 (8th Cir. 1994) (emphasis original); *see Pizarro II*, 111 F.4th at 1173 ("This duty of prudence is objective, judged by the information available at the time of each investment decision—not by the glow of hindsight."). Loss causation is proved by showing that the challenged investments were not objectively prudent. *Pizarro II*, 111 F.4th at 1176. "That means they must have fallen outside the 'range of reasonable judgments a fiduciary may make based on her experience and expertise,' such that a hypothetical prudent fiduciary in the same circumstances as the defendant, armed with the information that a proper evaluation would have yielded, would not (or could not) have made the same choice." *Id.* (quoting *Hughes*, 595 U.S. at 177).

This analysis requires a court to consider both (1) the reasonable range of outcomes that may have resulted from a prudent process and (2) the particular circumstances of the defendant. Rather than conduct this fact-intensive analysis, the district court concluded that the Russell TDFs were objectively prudent based solely on evidence that they underperformed their custom benchmarks by a degree that it arbitrarily determined was "not significant." Doc. 273 at 19.[1] This was clear error.

---

[1] Record citations are to the district court's ECF-generated pagination. Documents sealed in the district court generally do not have ECF-generated pagination. Record citations to documents without ECF-generated pagination are to the Bates stamp number or, if the document has no Bates stamp, to the internal pagination.

**A.** **Comparing the Russell TDFs to their custom benchmark does not establish that they were objectively prudent investments for *this* Plan.**

The district court misunderstood the nature of Plaintiff's comparison of the Russell TDFs against their custom benchmark. Plaintiff proposed this comparison for the purpose of establishing ***loss***. *See* Doc. 191-1 at 16-19; *Pizarro v. Home Depot, Inc.*, 634 F. Supp. 3d 1260, 1286 n.160 (N.D. Ga. 2022) (hereinafter *Pizarro I*) (discussing the index approach to establishing loss), *aff'd*, 111 F.4th 1165 (11th Cir. 2024).

The question of loss ***causation*** involves a separate analysis. A plan may experience losses on its investments for any number of reasons. But, even in cases where the fiduciaries failed to "appropriately monitor and evaluate" the investment—in dereliction of their duty of prudence—the plaintiff must still show that these "investment choices were objectively imprudent." *Pizarro II*, 111 F.4th at 1170. The lack of such evidence "mean[s] that any losses to the plan were not caused by [the fiduciary's] failure to investigate." *Id.* A plaintiff establishes this causal link between breach and loss by "show[ing] that a hypothetical prudent fiduciary, armed with the information a proper evaluation would have yielded, would not have made the same choices." *Id.* at 1171.

Comparing the Russell TDFs against their custom benchmark, as the district court did here, does not answer this question. At best, the comparison may indicate

3

whether Russell executed its chosen strategy.[2] "But the prudence of the investment of the assets in question cannot be analyzed in the abstract." *GIW Indus., Inc. v. Trevor, Stewart, Burton & Jacobsen, Inc.*, 895 F.2d 729, 732 (11th Cir. 1990). The district court's comparison says nothing about whether a hypothetical prudent fiduciary, following a proper evaluation, would have chosen to invest the Plan's assets in the Russell TDFs.

Answering *that* question requires considering whether the Russell TDFs were appropriate for the Plan "in light of [the Plan's] investment objectives" such that replacing the Vanguard TDFs with Russell's TDFs fell within "the 'range of reasonable judgments a fiduciary may make….'" *Pizarro II*, 111 F.4th at 1176, 1180 (quoting *Hughes*, 595 U.S. at 177). In particular, a prudent fiduciary would consider "the anticipated needs of the [Plan]" based on "information [that] was available and should have been sought" in order to determine whether the Russell TDFs were "structure[d] … to fit the specific needs of [the Plan]." *GIW Indus.*, 895 F.2d at 732-33. The district court erred by limiting its analysis of causation to a comparison of

---

[2] ████████████████████████████████████████████
████████████████████████████████████████████████
██████████████ Doc. 191-26 at 21. ██████████████
████████████████████████████████████████████████
████████████████████████████████████████ *Id*.
Underperforming the already low bar that Russell set for itself by 0.71% per year, which equates to ***about $11 million in losses*** during the class period, is a substantial failure. Doc. 273 at 20 n.9; Doc. 178-26 at 6.

the Russell TDFs against their custom benchmark, without any consideration of the needs and objectives of the Plan and whether selection of the Russell TDFs was within the range of reasonable judgments that a prudent fiduciary would make to meet those needs and objectives.

**B.    To determine loss causation, a court must consider whether the challenged investments fall within the range of reasonable outcomes which may have resulted from a prudent process.**

In its summary judgment order, the district court refused to consider any process-related evidence when analyzing objective prudence. Doc. 273 at 20-21 (concluding evidence went only to procedural prudence and could not establish loss causation). Royal Caribbean Defendants argue that "Plaintiff's view of the world would 'collapse the analysis of the fiduciary's *process* into the evaluation of the objective *result* of that process, defeating the whole purpose of the objective-prudence prong of the inquiry.'" Response Brief at 14-15[3] (quoting Doc. 273 at 18-19); *see also id.* at 13 (mischaracterizing Plaintiff's argument). This is simply false. Plaintiff does not contend that procedural prudence and loss causation are the same. Procedural prudence asks whether the fiduciaries followed a prudent process; when the answer is no, loss causation asks what the outcome would have been if they had. While these are different questions, process-related evidence is relevant to both.

---

[3] Citations to Royal Caribbean Defendants' Response brief is to this Court's ECF-generated pagination.

*Pizarro II* did not articulate a new causation standard. While recognizing that circuits are split on which party bears the burden of proof on this issue, 111 F.4th at 1174 n.2, *Pizarro II* applied the same causation standard applied by numerous appellate courts, including this Court, for decades. *See, e.g., GIW Indus.*, 895 F.2d at 733 ("If appellant had investigated the age and projected retirement plans of employee participants, it could have anticipated the need for cash…."); *Roth*, 16 F.3d at 919 ("To say that their decision was objectively reasonable would require taking into account everything that the trustees *should have known* at the time of their decision." (emphasis in original)); *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 368 (4th Cir. 2014) (causation requires determining whether "a prudent fiduciary would have made the same decision" which requires evaluating "all relevant evidence[]" available at the time); *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 33 (1st Cir. 2018) (causation is a question of whether "a hypothetical prudent fiduciary would have made the same decision anyway" (quoting *Roth*, 16 F.3d at 919)); *Jenkins v. Yager*, 444 F.3d 916, 928 (7th Cir. 2006) (Evidence showing that "[h]ad [the fiduciary] been monitoring the investments adequately, he might not have made such a choice[]" raises a genuine issue as to causation.); *Fink v. National Savings & Trust Company*, 772 F.2d 951, 961-63 (D.C. Cir. 1985) (Scalia, J., concurring in part and dissenting in part).

6

The genesis of this standard is commonly recognized to be then-Judge Scalia's partial concurrence in *Fink*. As Justice Scalia explained: "[T]he determination of whether an investment was objectively imprudent is made on the basis of what the trustee knew or should have known; and the latter necessarily involves consideration of ***what facts would have come to his attention if he had fully complied with his duty to investigate and evaluate***." *Fink*, 772 F.2d at 962 (Scalia, J., concurring in part and dissenting in part) (emphasis added). Although "[i]t is the imprudent investment rather than the failure to investigate and evaluate that is the basis of suit[,] breach of the latter duty is merely evidence bearing upon breach of the former, tending to show that the trustee *should have known* more than he knew." *Id.*; *GIW Indus.*, 895 F.2d at 733 (same). In other words, while loss causation and procedural prudence (or lack thereof) are separate inquiries, evidence of process is relevant to both. *Cutrone v. Allstate Corp.*, No. 20 CV 6463, 2025 WL 306179, at *4 (N.D. Ill. Jan. 27, 2025) (explaining that "procedural prudence can bear on the question of objective prudence[]"); *see also GIW Indus.*, 895 F.2d at 733 (concluding investment manager could have anticipated the need for cash had it conducted a proper evaluation).

The proper analysis requires a court to determine what additional information would have been acquired from a prudent process, and whether a fiduciary would have made the same decision if it had known that information. *Pizarro II*, 111 F.4th

at 1176; *see Roth*, 16 F.3d at 919 ("To say that their decision was objectively reasonable would require taking into account everything that the trustees *should have known* at the time of their decision."). This necessarily requires a court to review process-related evidence to determine (1) the steps that would have been undertaken in a proper evaluation and (2) the information that would have resulted from such steps.

The Third Circuit's analysis in *In re Unisys Savings Plan Litigation*, 74 F.3d 420 (3d Cir. 1996), is illustrative. At issue was the purchase of five-year guaranteed investment contracts ("GIC") from Executive Life. *In re Unisys Savings Plan Litig.*, 74 F.3d at 427-28, 431. A consultant recommended that Unisys consider the purchase of a three-year GIC but five-year GICs were purchased instead, and it was unclear from the record whether the relative merits of these different maturity dates were considered. *Id.* at 427-28, 437. The Third Circuit explained that "if this debate did not take place, a reasonable factfinder could conclude that Unisys did not adequately deliberate its investment decision *and that had it done so, it would have rejected a long-term investment in Executive Life*." *Id.* at 427 (emphasis added).

*Pizarro II* is no different. Where the additional information that a prudent process would have yielded would have caused the challenged investments to fall "outside the range of reasonable judgments a fiduciary may make[,]" the loss causation element is met. *Pizarro II*, 111 F.4th at 1176 (internal quotation marks

omitted). Because a reasonable factfinder could conclude that Royal Caribbean "did not adequately deliberate its investment decision and that had it done so, it would have rejected" Russell and the Russell TDFs, summary judgment must be reversed. *In re Unisys Savings Plan Litigation*, 74 F.3d at 437.

### C. A court must consider the Plan's particular circumstances.

The district court erred by refusing to consider the character and aims of the Plan when analyzing loss causation. Doc. 273 at 18-19. Royal Caribbean Defendants argue that considering the context of the Plan would render the objective prudence standard subjective. Response Brief at 27-28, 39-41. This again is false.

Both the Supreme Court and this Court consider a party's circumstances as part of an objective standard. *See, e.g., Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (judging "objective severity of harassment" in a Title VII claim "from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances[]" (internal quotation marks omitted)); *United States v. Gray*, 367 F.3d 1263, 1272 (11th Cir. 2004) (explaining that "the objective, reasonable person of ordinary prudence standard must be anchored in reality and connected to the material circumstances surrounding the victim" in a mail fraud case); *Harris v. Reverse Mortg. Sols. Inc.*, 800 F. App'x 708, 712 (11th Cir. 2020) (Under Alabama law, "[t]he duty of care is an objective standard determined by what

an ordinary careful and prudent person would have done under the same or similar circumstances." (internal quotation marks omitted)).

These cases recognize that conduct may be objectively hostile, objectively likely to deceive, or set the objective duty of care in some circumstances, but not in others. For example, "[a] professional football player's working environment is not severely or pervasively abusive, for example, if the coach smacks him on the buttocks as he heads onto the field—even if the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office." *Oncale*, 523 U.S. at 81. Simply put, taking account of the surrounding circumstances does not render an objective standard subjective.

This is not controversial. In *GIW Industries*, this Court rejected an investment manager's argument that its investment in 30-year United States Treasury bonds was prudent. 895 F.2d at 732-33. This Court explained that, although "the evidence shows that investment in long-term government bonds … was viewed by many as a sound strategy[,]" such an investment was inappropriate for the fund in question based on the fund's "cash flow needs[,]" which the investment manager "could have anticipated" if it "had investigated the age and projected retirement plans of employee participants[.]" *Id.* The relevant question, therefore, is not whether an investment is prudent "in the abstract[,]" but whether it is prudent in light of "the specific needs of [the plan]." *Id.*; *see also Pizarro II*, 111. F.4th at 1176 (explaining

10

that objective prudence must be determined based on "the information that a proper evaluation would have yielded"); *Fink*, 772 F.2d at 962 (Scalia, J., concurring in part and dissenting in part) (explaining that "the determination of whether an investment was objectively imprudent is made on the basis of what the trustee knew *or should have known"*).

This squares with ERISA's command that a fiduciary act "with the care, skill, prudence, and diligence ***under the circumstances then prevailing*** that a prudent man acting ***in a like capacity*** and familiar with such matters would use in the conduct of an enterprise of a ***like character and with like aims***." 29 U.S.C. § 1104(a)(1)(B) (emphasis added). Courts recognize that ERISA requires a "granular analysis tailored to a plan's 'character' and 'aims.'" *Pizarro II*, 111 F.4th at 1178 (quoting 29 U.S.C. § 1104(a)(1)(B)); *see Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1022 (9th Cir. 2025) ("By making the standard of care that of a hypothetical prudent person 'acting *in a like capacity* … in the conduct of an enterprise *of a like character* and *with like aims*,' the statute makes clear that the goals of the plan matter."); *In re Unisys Sav. Plan Litig.*, 74 F.3d at 434 (explaining "the adequacy of a fiduciary's independent investigation and ultimate investment selection is evaluated in light of the character and aims of the particular type of plan he serves[]" (internal quotation marks omitted)).

11

Thus, the particular character and aims of the Plan must be considered when analyzing whether Royal Caribbean Defendants' imprudent process caused losses to the Plan. Contrary to Royal Caribbean Defendants' argument, there is nothing amiss in concluding that the same investment option could be considered both objectively prudent for one plan and objectively imprudent for another, depending upon the characters and aims of the plans selecting it. *See* Response Brief at 27-28, 40-41. Rather, it is the opposite conclusion—that an investment must be objectively prudent or imprudent for *all* plans—that poses problems and has already been rejected by this Court. *GIW Indus.*, 895 F.2d at 732-33.

Plans vary in their terms, purposes, aims, and participants. Accordingly, as this Court has long recognized, "the prudence of the investment of the assets in question cannot be analyzed in the abstract[,]" but must instead consider the information that a fiduciary should have known in light of "the specific needs of [the Plan]." *GIW Indus.*, 895 F.2d at 732-33.

### D.    Comparator evidence is not required to establish loss causation

Royal Caribbean Defendants are wrong that establishing loss causation requires comparisons to a "meaningful benchmark." *See, e.g., GIW Indus.*, 895 F.2d at 731-33 (concluding an investment manager caused losses to the fund without a comparator analysis); *In re Unisys Sav. Plan Litig.*, 74 F.3d at 433-37 (concluding a reasonable factfinder could find the fiduciary caused losses to the plan without a

comparator analysis). The district court erred in accepting this argument and ignoring all other evidence of loss causation.

The Ninth Circuit recently explained that the "meaningful benchmark" standard is only applicable where a plaintiff lacks direct evidence of a fiduciary's process. *Anderson*, 137 F.4th at 1022. This standard is often applied at the motion to dismiss stage, when "plaintiffs generally will know only the outcome of a fiduciary's decisions—which investments were selected, for example, and how those investments performed. ***They typically will not know details about the process by which these decisions were made***—which other options were considered, or how and why certain investments were selected over alternatives." *Anderson*, 137 F.4th at 1028 (Berzon, J. concurring) (emphasis added). Thus, showing underperformance compared to a "meaningful benchmark" is one way to plead an ***inference*** of an imprudent process "to show a breach of the duty of prudence only through the circumstantial route" when a plaintiff lacks direct evidence of a fiduciary's process. *Anderson*, 137 F.4th at 1022.

However, this does not mean that comparator evidence is the ***only*** method of proof available. *Id.* at 1021, 1023, 1025; *see GIW Indus.*, 895 F.2d at 731-33; *In re Unisys Sav. Plan Litig.*, 74 F.3d at 433-37. Moreover, the standard applies to breach,

13

not causation (*i.e.* whether a prudent fiduciary would have acted differently).[4]
Accordingly, the district court erred by refusing to consider non-comparator evidence.

## II. A reasonable factfinder could conclude that Royal Caribbean Defendants' breaches caused losses to the Plan.

Applying the correct legal standard, it is easy to determine that a reasonable factfinder could conclude that Royal Caribbean Defendants' breaches caused the Plan to suffer losses.

### A. Plaintiff offered evidence that a prudent fiduciary would not have selected the Russell TDFs.

#### 1. Plaintiff offered evidence that the Russell TDFs were inconsistent with the Plan's goals.

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████ Doc. 191-6 at

---

[4] Causation requires only a showing that a prudent fiduciary would have acted differently, and loss "requires a comparison between the actual performance of the Plan and the performance that otherwise would have taken place." *GIW Indus.*, 895 F.2d at 733 (quoting *Donovan v. Bierwirth*, 754 F.2d 1049, 1057 (2d Cir. 1985). Importing the "meaningful benchmark" standard as a necessary element of causation or loss would upend decades of caselaw. *See, e.g., id.* at 731-33. The "meaningful benchmark" standard should be left in its proper context—to the extent a plaintiff asks a court to infer breach based on the challenged investments' performance, he must compare that performance to funds or investments that are meaningfully similar. *Anderson*, 137 F.4th at 1023. It does not apply elsewhere.

15602; Doc. 186-5 at 18. The district court refused to consider the Committee's aims, reasoning that, if it did so, "any time a fiduciary's chosen investment can be described as 'underperforming,' in some way, compared to its predecessor or replacement investment, the choice would be automatically deemed imprudent." Doc. 273 at 18. This is simply not the case.

██████████████████████████████████████████████

███████████████████████████████████████ For example, in *Cutrone*, the plan had the ████████ goal of preserving assets after the 2008 financial crisis. *See* 2025 WL 306179, at *1, 9-10. The fiduciaries in *Cutrone* intentionally sought a conservative or middle-of-the-road investment that provided downside protection, and two separate independent advisors "consistently blessed the [at-issue TDFs] as a suitable plan option." *Id*. at *9-10. Here, Royal Caribbean Defendants

████████████████████████████████████████████████

██████████████████████████████████████████ *See infra* at 20-26. All of this information was available before selecting the Russell TDFs for the Plan, and a prudent process would have uncovered it.

Second, Plaintiff does not assert that it is only █████████████████████████

█████████████████████████████████████████ that establishes loss causation. Rather, Plaintiff argues that a hypothetical prudent fiduciary for the Plan would have compared the Russell TDFs to the legacy Vanguard TDFs and

considered other available peer performance data and, with the information that this proper evaluation would have yielded, would not have hired Russell and selected the Russell TDFs. The fact that Russell performed in the bottom quartile compared to peers ███████████████████████████████████████ See Doc. 186-9 at 4. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

Doc. 191-5 at 42 ███████████████████████████████████

████████████████████████████████████████

██████████ (emphasis added)).

### 2. Plaintiff offered evidence that the Russell TDFs were a poor fit for the Plan generally.

████████████████████████████████████████

██████████████████████ *See id.* at 39 █████████████

████████████████████████ ; *see also* 41-49 █████████████

████████████████████████████████████████

████████████████████████ ; *Lauderdale v. NFP Ret., Inc.*, No. 821CV00301JVSKES, 2024 WL 751005, at *26-27 (C.D. Cal. Feb. 23, 2024) (describing TDF "[f]it [a]nalysis" considering participant demographics, investor preferences, appropriate risk level, and evaluation of multiple "TDF options available in the market that match the needs" of the plan "including an assessment

16

of performance and fees[,]" etc.). ██████████████████████

██████████████████████████████████ Doc. 191-5 at 46-

47 █████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████.

███████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████ *Id.* at 47. White Oak's analysis confirmed that other TDFs

beyond Vanguard would also have better fit the needs of the Plan. *See* Doc. No. 177-

39 at 25-28 (White Oak analysis showing the Committee's appropriate "Risk

Tolerance Glidepath" as a "through" glidepath that is more aggressive than Russell's

TDF glidepath).[5] All of this information would have been considered by a prudent

fiduciary.

---

[5] Royal Caribbean Defendants' attempt to contradict the direct evidence███████████
████████████████████ falls short. See Response Brief at 40
n.12 (arguing that the Committee was "[c]onservative" and "risk consc[ious]"
(quoting Doc. 177-39 at 25-26)). Defendants rely on this out-of-context language
from the White Oak Report and entirely ignore that White Oak's glidepath analysis
shows that Russell's glidepath did not match the Committee's "Risk Tolerance
Glidepath." Doc. 177-39 at 28. Royal Caribbean Defendants did not agree with the
Russell TDFs' objectives and instead "prefer[red] more upside and [we]re

17

### 3.     Plaintiff offered evidence that fiduciaries conducting proper investigations rejected the Russell TDFs.

Plaintiff offered evidence that other investment professionals rejected the Russell TDFs. In *Pizarro II*, this Court explained that it is proper for a court to consider whether "many other sophisticated investment professionals ***managing similarly sized plans*** made the same choice as [defendant]…." *Pizarro II*, 111 F.4th at 1178 (emphasis added). ████████████████████████

████████████████████ even while TDFs were the fastest growing segment of the defined contribution market. *See* Doc. 191-9 at 211413; Doc. 186-10 at 2.

████████████████████████████████████████

████████████████████████████████████████

*See* Doc. 191-2 at 12; Doc. 191-28 at 1413 Doc. 203-1. Russell conceded an ongoing "low AUM and low number of clients, and large # of client losses vs. # client gains." Doc. 186-10 at 2; *see* Doc. 203-1 ████████████████████

████████████████████████████████████████

██████████. ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████ *Cf. Pizarro II*, 111 F.4th at 1178.

---

comfortable with greater downside…." Doc. 186-66 at 2. At best, they have created a fact dispute that warrants reversal.

**4.    Plaintiff offered evidence that Royal Caribbean Defendants ignored independent advice.**

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████ Doc. 191-5 at 10.

Russell's RFP response said, if hired, "Russell would require Royal Caribbean to utilize [the Russell TDFs]" in its Plan and "offer a minimum of 75% of the plan assets in the [Russell Funds]." Doc. 178-4 at 14, 17. ███████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████ Doc. 191-5 at 29.

Royal Caribbean's own counsel agreed that a "significant disadvantage of [Russell's] proposal is Russell's requirement that a plan offer a minimum of 75% of plan assets in the [Russell Funds]." Doc. 177-29 at 5. ████████████████████████

███████████████████████████████████████████████████

████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████ Doc. 191-5 at 29. A prudent fiduciary who

19

received Russell's response to the RFP and the warning of counsel would have considered Russell's conflict and undertaken *some* independent evaluation of the Russell TDFs and, armed with the resulting information, would not have hired Russell or selected the Russell TDFs. *See In re Unisys Savs. Plan Litig.*, 74 F.3d at 437 (explaining that a fiduciary's failure to debate its decision to ignore part of a consultant's advice could lead a reasonable factfinder to conclude the fiduciary did not adequately deliberate its investment decision and that had it done so, it would have rejected the chosen investment). ███████████████████

███████████████ Doc. 191-5 at 30 ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████. A Committee member admitted that, when the Committee was selecting the Russell TDFs, "I don't think we were considering whether they were appropriate" for the Plan. Doc. 186-29 at 11.

### B. The district court erred by refusing to consider evidence related to the Vanguard and American Funds TDFs.

The district court refused to consider Plaintiff's comparisons of the Russell TDFs to the Vanguard and American Funds TDFs when analyzing loss causation because it found they had different strategies, glide paths, and asset allocations. Doc. 273 at 16-19. Royal Caribbean Defendants endorse that approach. Response Brief at

28-31. However, the district court's acontextual analysis flies in the face of ERISA and common sense.

A hypothetical prudent fiduciary for a plan with like aims would have compared the Russell TDFs to the legacy Vanguard TDFs and other peers ***before*** replacing Vanguard with Russell. This is common sense. Of course, a prudent fiduciary of a plan ███████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████

"[A]t the time the Russell [TDFs] were added to the Plan in 2015, all vintages of the Russell [TDFs] had underperformed their Vanguard and American Fund counterparts considerably." Doc. 212-6 at 6-7; *see* Doc. 191-2 at 8. Specifically, the Russell TDFs underperformed the legacy Vanguard TDFs by nearly 12% from the Russell TDFs' existence to the time they were added to the Plan. Doc. 212-6 at 8. Russell underperformed the American Fund TDFs by nearly 16% during the same period. *Id.* at 7. And it was not just those comparators. Russell was in the "worst 25% in many cases" of all TDF peers. Doc. 186-9 at 4.

No reasonable fiduciary would conclude that Russell was a better fit for the Plan than Vanguard or American Funds based on the contemporaneous data. This is not speculation. ████████████████████████████████████████

████████████████████████████████████████████████████████



*See, e.g.*, Doc. 191-26 at 30

. It is not a coincidence that the Russell TDFs were selected only when the Committee lacked any comparative process or consideration of other options.[6]

Doc. 191-5 at 63-64.

*See Pizarro II*, 111 F.4th at 1178 (explaining that evidence that many investment professionals made the same choice suggests that other fiduciaries acting in a like

---

[6] Royal Caribbean Defendants' proffered evidence does not support that the Committee desired hybrid management. *See* Response Brief at 16. Rather, it shows only that the CFO, who was not a member of the Committee, inquired about the amount of Russell's total assets under management ("AUM") held in Russell index funds. Doc. 177-35 at 3. This lone question does not concern the Russell TDFs or their strategy. *Id.*; *see also* Doc. 177-36 (showing no discussion of active vs. passive management by any Committee member); Doc. 177-57 at 7-8 (citing only Doc. 177-35 and Doc. 177-36 to support claimed preference for hybrid management).

capacity would have made the same choice in the conduct of an enterprise of like character and with like aims). ███████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Doc. 191-5 at 39. ██████████████████████████████

█████████████████████████ *Id.* at 39-40, 42-43, 63-64.

Royal Caribbean Defendants argue that comparisons to Vanguard and American Funds are inappropriate because the Russell TDFs pursued a "conservative investment strategy" that made them less risky. Response Brief at 30. The district court credited this argument, finding that "'ERISA does not require that fiduciaries choose the maximally aggressive option….'" Doc. 273 at 17 (quoting *Pizarro II*, 111 F.4th at 1180). While that proposition may be true, the evidence here does not support Royal Caribbean Defendants' argument. Dr. Pomerantz's analysis shows that the Russell TDFs actually took ***more*** risk than the Vanguard TDFs from the Russell TDFs' inception to the time they were added to the Plan. Doc. 212-6 at 8-10; *see also* Doc. 191-12 at 6 ██████████████████████████

████████████████████████████████████████████

████████████████████████████████████.[7]  ███████████

---

[7] Even if the goal was to select a conservative TDF, a prudent fiduciary would have compared conservative options and would not have selected Russell. White Oak's Report identified that the Russell TDFs "were underperforming against similar style

███████████████████████████████████████████████ Doc. 191-

26 at 20; *see also* Doc. 186-10 at 2 (including Vanguard as one of four peer

competitors that Russell modeled its glidepath redesign on).[8]

Even if the Russell TDFs were materially less risky than the Vanguard and

American Funds TDFs, ███████████████████████████████████

██████████████████████████████ "Conservatism" is not a

blanket protection granting fiduciary immunity ███████████████████

████ The Fourth Circuit rejected a similar argument as to "diversification" of plan

assets:

> Pursuant to [the dissent's interpretation], ERISA's protections would be
> effectively unenforceable any time a fiduciary invokes the talisman of
> 'diversification.' Under the dissent's reading of the statute, any decision
> assertedly 'made in the interest of diversifying plan assets' would be
> automatically deemed 'objectively prudent.' This approach would put
> numerous investment decisions beyond the reach of ERISA's fiduciary
> liability provision.

---

funds as well as the market[]" and "could have 15% higher relative returns" even

after adjusting for risk. Doc. 177-19 at 2. ████████████████████████

███████████████ Doc. 191-12 at 6 ███████████████████████

████████████████████████████████████████████████

Doc. 212-6 at 8-10.

[8] Royal Caribbean Defendants' falsely claim that "none of Plaintiff's experts
conducted any independent analysis" of "whether such comparisons are
appropriate." Response Brief at 31 n.8. In addition to this analysis from Dr.
Pomerantz, █████████████████████████████████████████████
████████████████████ *See* Doc. 191-26 at 17-20.

*Tatum*, 761 F.3d at 370. Replace "diversification" with "conservatism" and the same logic applies. To hold that a conservative investment is objectively prudent ███████████████████████████ would reduce "the standard of care owed by ERISA fiduciaries[]" from "the highest known to law[]" to one that can be satisfied by complete abdication. *Herman v. NationsBank Tr. Co., (Georgia)*, 126 F.3d 1354, 1361 (11th Cir. 1997) (internal quotation marks omitted).

When a conservative choice has been deemed objectively prudent, it was a deliberate choice made for the benefit of plan participants. For example, in *Pizarro II*, this Court explained that "Home Depot offered the stable value fund ***because*** it was conservative, advertised it as conservative," and, "[b]ecause the fund met the expectations set for it, the plaintiffs' breach-of-fiduciary-duty claim relying on comparisons to other, more aggressive benchmarks fail." 111 F.4th at 1181 (emphasis added). In other words, if conservatism is the proper goal, the fact that the fund underperformed other, more aggressive options does not indicate that a prudent fiduciary would have acted differently. *See Anderson*, 137 F.4th at 1022-24 (declining to consider plaintiff's comparators because Intel intentionally pursued and disclosed its "risk-mitigation objective"); *Cutrone*, 2025 WL 306179, at *10 (rejecting plaintiffs' comparator data where defendants received independent advice to retain a more conservative TDF for the plan and did so deliberately).

The facts of this case warrant a different result. ████████████

████████████████████████████████████████

████████████████████████████ Doc. 191-2 at 7; Doc. 191-5 at

46 ██████████████████████████████████████

████████████. ████████████████████████████

██████████████████ Doc. 191-6 at 15604. Royal Caribbean Defendants still

did not understand the Russell TDFs' glidepath philosophy more than a year after

they were selected for the Plan, much less before their selection. Doc. 186-36 at 3;

Doc. 191-5 at 46 ████████████████████████████

████████████████████████████████████████

██████. Simply put, Royal Caribbean Defendants were not convinced Russell's

approach had merits. Doc. 186-36 at 2; *see* Doc. 186-66 at 2 (more than a year after

the Russell TDFs were selected, Russell had not moved the dial in terms of Royal

Caribbean agreeing with Russell's glidepath and diversification).  It is axiomatic that

any fiduciary that conducts a prudent investigation ████████████████████

████████████████████████ Of course, a reasonable factfinder

could conclude that a prudent process would have led to a different result here.

## CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment

should be reversed and the case remanded for further proceedings.

26

Date:  August 4, 2025                     Respectfully Submitted,

**NICHOLS KASTER, PLLP**

*/s/ Brock J. Specht*
Paul J. Lukas
lukas@nka.com
Brock J. Specht
bspecht@nka.com
Benjamin J. Bauer
bbauer@nka.com
4700 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878

**WENZEL FENTON CABASSA, P.A.**
Brandon J. Hill
1110 North Florida Avenue
Suite 300
Tampa, FL 33602
Telephone: (813) 337-7992

*Attorneys for Plaintiff-Appellant Ann
Johnson*

27

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

I. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 6,443 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

II. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365, in 14-point Times New Roman.

Date: August 4, 2025              */s/ Brock J. Specht*
                                  Brock J. Specht
                                  Nichols Kaster PLLP
                                  *Counsel for Plaintiff-Appellant Ann Johnson*

1

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system, causing a Notice of Electronic Filing to be transmitted to all counsel of record.

I further certify that on August 4, 2025, I caused an unredacted version of the foregoing to be served via e-mail on the following counsel for Defendants-Appellees after obtaining their consent:

Robert C. Hora
Sean M. Murphy
**MILBANK LLP**
55 Hudson Yards New York, NY 10001
Telephone: (212) 563-5000
rhora@milbank.com
smurphy@milbank.com

William E. Havemann
**MILBANK LLP**
1850 K Street, NW Suite 1100
Washington, D.C. 20006
whavemann@milbank.com

Lars C. Golumbic
William J. Delany
Samuel I. Levin
Larry M. Blocho Jr.
Richard A. Smith, Jr.
**GROOM LAW GROUP, CHARTERED**
1701 Pennsylvania Ave., NW Suite 1200
Washington, DC 20006

Telephone: (202) 861-6615
lgolumbic@groom.com
wdelany@groom.com
slevin@groom.com
lblocho@groom.com
rsmithjr@groom.com

Kristen M. Fiore
**AKERMAN LLP**
201 E Park Ave., Suite 300
Tallahassee, FL 32301
Kristen.fiore@akerman.com

Alejandro Paz
**AKERMAN LLP**
98 Southeast 7th St., Suite 1100
Miami, FL 33131
Alejandro.paz@akerman.com

<u>/s/ *Brock J. Specht*</u>
Brock J. Specht
Nichols Kaster PLLP
*Counsel for Plaintiff-Appellant*
*Ann Johnson*

3